CAMPBELL, Plaintiff, v. WILSON, by GUARDIAN *ad litem,* and another, Defendants and Appellants: BADGER STATE MUTUAL CASUALTY COMPANY, Impleaded Defendant and Respondent.*

*October 4—October 30, 1962.*

* Motion for rehearing denied, with $25 costs, on January 10, 1963.

24

25

For the appellants there were briefs and oral argument by *James G. Sisolak* of Milwaukee.

For the respondent there was a brief by *Wickham, Borgelt, Skogstad & Powell,* and oral argument by *Reuben W. Peterson, Jr.,* all of Milwaukee.

CURRIE, J.   The two issues presented by this appeal are:

(1) Did the order for new trial in the interest of justice comply with the requirements of sec. 270.49 (2), Stats. 1961?

(2) Should the trial court have granted defendant Insurance Company's motions for directed verdict and judgment notwithstanding the verdict?

*Failure of Order to Comply with Statutory Requirements.*

Sec. 270.49 (2), Stats., as amended by ch. 494, Laws of 1961, provides in part as follows:

"No order granting a new trial in the interest of justice shall be valid or effective, unless the reasons that prompted

the court to make such order are set forth in detail therein or the memorandum decision setting forth such reasons is incorporated by reference in such order."

Apart from any reasons stated in the trial court's oral decision on motions after verdict, the only reason stated in the order granting the new trial in the interest of justice is that the jury's answer to the single question of the special verdict "was against the great weight of the evidence." Such a statement does not comply with the statutory requirement that the reasons for granting a new trial be set forth *"in detail." Guptill v. Roemer* (1955), 269 Wis. 12, 20a, 20b, 68 N. W. (2d) 579, 69 N. W. (2d) 571. Nevertheless, the order recites that the reasons which prompted the trial court to grant a new trial in the interest of justice "are set forth in the memorandum decision of the court on file herein." The crucial question is whether the unfiled transcript of the trial court's decision rendered from the bench on the motions after verdict constituted a "memorandum decision . . . on file herein."

We have no hesitancy in holding that a decision on motions after verdict, which is given orally from the bench and then transcribed and filed with the clerk of court as part of the record in the case, constitutes a "memorandum decision" within the meaning of sec. 270.49 (2), Stats. 1961. Busy trial judges find that this method of deciding motions after verdict is a great time-saver when the issues are clear cut and fairly simple of solution. The appeals reaching this court demonstrate that this method is in common use among our trial judges. While no statute so requires, we would recommend that a trial judge employing this method of deciding motions after verdict, where a new trial is granted in the interest of justice, direct that copies of the transcribed decision be mailed to counsel for all parties to the action even though counsel be present when the decision is pronounced in open court.

In the instant case, no memorandum decision was on file as part of the record when the order granting a new trial was entered on March 2, 1962. In fact, the transcript of the trial court's decision on motions after verdict was not so filed until March 15, 1962. Since we hold that a transcript of a verbal decision rendered from the bench does not become a "memorandum decision" until filed as part of the record in the case, no "memorandum decision" existed on March 2, 1962, which the order for new trial could incorporate by reference. We interpret the statutory provision, which permits the order granting a new trial in the interest of justice to incorporate by reference the reasons therefor set forth in the memorandum decision, to require that the memorandum decision be in existence and on file when the order incorporating same is entered.

Inasmuch as the appealed order, which granted a new trial in the interest of justice, did not comply with sec. 270.49 (2), Stats. 1961, as herein interpreted, it must be reversed.

### Right of Insurance Company to Prevail as a Matter of Law.

By its motion for review, defendant Insurance Company challenges the denial of its motions for directed verdict and for judgment notwithstanding the verdict. The company takes the position that as a matter of law cross complainants Wilson failed to adduce any evidence to sustain the finding of the jury on the issue of coverage. A review of the evidence is necessary in order to resolve this issue.

From June 9, 1953, to June 9, 1960, defendant Reginald Wilson (hereinafter "Wilson") carried insurance on his automobile with defendant Insurance Company. These policies were issued on an annual basis and each expired on June 9th. All of Wilson's dealings were with one Gother,

an agent of the company of many years' standing, who maintained an office in Milwaukee. The underwriting manager of the company testified that Gother had authority to verbally bind the company to insurance coverage, provided the insured was an acceptable risk. When each new policy was issued, Gother would bill Wilson for the premium. Gother testified that a "kind of an understanding" existed between them and that Wilson paid "as best he could" at his convenience. There had been but one change in these seven policies with respect to description of the insured vehicle. That change occurred in 1956 when Wilson purchased a 1954 Chevrolet and sold the originally insured vehicle. Wilson's son Leslie was driving this 1954 Chevrolet on June 20, 1960, at the time of the collision which gave rise to the instant action.

Wilson testified in part as follows: In February, 1960, he bought a 1959 Chevrolet and telephoned Gother that he wanted insurance coverage on both the new car and the 1954 Chevrolet. Gother replied that he would "cover" the new car, and that Wilson was "covered." During this telephone conversation Gother requested Wilson to furnish a description of the new car. The next day Wilson went to Gother's office and gave a description of the new car to his secretary, a Mrs. Mueller. Wilson thereafter made three trips to Gother's office to inquire why he had not received "my policy." Gother was not there on any of these occasions; nevertheless Mrs. Mueller told Wilson on each occasion that she would "tell Mr. Gother." The last of these visits occurred about the end of May. Wilson testified that he visited Gother's office several times after February 18, 1960, because he wondered why the policy had not come through. Wilson did not receive any policy on or about June 9th, the anniversary date of the policy, or any bill for the premium. Wilson testified that he first learned about the cancellation of his insurance about two days after the

accident of June 20, 1960, when he telephoned Gother to report the accident. Gother then told Wilson that his insurance had been canceled.

Mrs. Mueller testified as follows: Shortly before June 9, 1960, she had a conversation with Wilson in Gother's office. Wilson wanted to know why "we" had not taken care of insuring his new car. After this visit, but before typing up the declaration for the new policy to be issued to Wilson, a person telephoned her and identified himself as Wilson. The caller told her that he wished to cancel his policy of insurance. She then inquired whether he wished the policy canceled "right today" or as of a few days later on June 9th, the anniversary date. The caller replied, "As of right now. I am going to get insurance somewhere else." Mrs. Mueller was unable to identify the caller as Wilson by the sound of the caller's voice. Her inability to identify the voice prompted counsel for the Wilsons to move that Mrs. Mueller's testimony relating to this telephone conversation be stricken. This motion was denied.[1] Following her testimony, Wilson again took the stand and flatly denied that he had telephoned Mrs. Mueller and directed the cancellation of his policy.

Gother testified that the call he received from Wilson about coverage for the new car occurred about the end of May, 1960, and not in February of that year. Gother

---

[1] Telephone conversations may be authenticated by circumstantial evidence. Where the message itself reveals that the speaker has knowledge of facts which only the person whose name he has used would be likely to know, this is sufficient authentication. McCormick, Evidence (hornbook series), p. 405, sec. 193; *Merchants Nat. Bank v. State Bank* (1927), 172 Minn. 24, 214 N. W. 750; *Morriss v. Finkelstein* (Mo. App. 1940), 145 S. W. (2d) 439. See also 26 Washington University Law Quarterly (1941), 433. Judge LEARNED HAND, in *Van Riper v. United States* (2d Cir. 1926), 13 Fed. (2d) 961, 968, stated "the substance of the communication may itself be enough to make *prima facie* proof" of the identification of the speaker.

.further testified that he normally would have sent a new policy to Wilson about June 2 or 3, 1960, but did not do so because of Wilson's request for cancellation made by telephone to Mrs. Mueller. The new policy for the year commencing June 9, 1960, had been received by Gother from the company and was then ready to be countersigned and issued. Because of the information received from Mrs. Mueller, Gother wrote, "please cancel flat" [2] across the face of the policy and returned it to the company. The following colloquy occurred between Gother and counsel for the Wilsons with respect to this policy which was "canceled flat:"

"*Q*. And that policy was issued pursuant to that conversation that you had with Mr. Wilson, and your previous negotiations let's say, is that right? *A*. Right.
"*Q*. And that policy would have been in effect from the period June 9, 1960, to June 9, 1961? *A*. Right."

Upon this summary of the evidence we are satisfied that no written policy of insurance was issued after the expiration of the policy covering the period of June 9, 1959, to June 9, 1960. Therefore, the question boils down to whether there is sufficient evidence to support a finding of a verbal contract to insure. On this question we do not deem the conversations between Wilson on the one hand, and Gother and Mrs. Mueller on the other concerning insurance coverage for the 1959 Chevrolet of much relevance except for Gother's testimony as to the conversation he had with Wilson about the end of May, 1960. It is apparent from the above-quoted testimony of Gother that he concluded that Wilson desired a renewal of the existing policy which

---

[2] In the insurance business, the words "cancel flat" mean that a policy has never been issued and that any premium previously charged to the agent by the company is canceled in full. When a policy has been issued before being canceled, the premium is canceled on a pro rata basis.

would be expiring in a few days. Coupled with this is the evidence that for a period of seven years a course of conduct had developed between Wilson and Gother whereby shortly before June 9th of each year Wilson would be mailed a new policy and a bill for the premium which he would then pay to Gother at his convenience. This would permit the jury to find that Wilson had the right to rely upon Gother's mailing him a new policy in June, 1960. Gother's testimony makes it clear that he would have done so had not Mrs. Mueller informed him of Wilson's telephoned request for cancellation. Whether or not Wilson requested cancellation of his insurance was sharply disputed by the testimony. The credibility of the witnesses was of course for the jury and it was within their province to resolve the cancellation issue either way.

The evidence establishes that Gother did have authority to bind the company to a verbal contract of insurance. Parol contracts to insure motor vehicles are enforceable. *Kiviniemi v. American Mut. Liability Ins. Co.* (1930), 201 Wis. 619, 231 N. W. 252; 1 Couch, Insurance (2d ed.), p. 579, sec. 14:5. This principle is applicable to parol contracts to renew an existing policy. *Cormican v. Anchor Casualty Co.* (1957), 249 Minn. 196, 81 N. W. (2d) 782; 6 Couch, Insurance (1st ed.), pp. 4922 *et seq.,* sec. 1364.

We conclude that there was sufficient evidence present to permit the jury to make the finding it did with respect to insurance coverage.

*By the Court.*—Order reversed, and cause remanded with directions to reinstate the verdict and enter judgment thereon adjudicating that defendants Wilson had insurance coverage from the impleaded defendant at the time of the accident of June 20, 1960, upon the same terms as provided in the policy which expired June 9, 1960.