REIMERS, Plaintiff in error, v. STATE, Defendant in error.*

*May 13—July 1, 1966.*

458

460

For the plaintiff in error there were briefs and oral argument by *Edward J. Hart* of Waupaca.

For the defendant in error the cause was argued by *Betty R. Brown,* assistant attorney general, with whom on the brief were *Bronson C. La Follette,* attorney general, and *William A. Platz,* assistant attorney general.

BEILFUSS, J. Upon this appeal it is the contention of the defendant, Reimers, that the receiving of his confessions into evidence was a violation of his constitutional rights under the Sixth amendment to the constitution of the United States because he was not given an opportunity to consult with counsel at and prior to the time the confessions were obtained.

The defendant has abandoned his claim of insanity. He does not deny he shot Holmes and struck Ruth Rollefson with the gun. He does not claim the evidence in the

record is insufficient to warrant a conviction of first-degree murder and aggravated battery. Nor does he claim that the confessions or statements given to the officers were unlawfully obtained by any force, threats, or promises, nor that they were not voluntarily given. On the contrary, in his testimony he stated he was well treated by the police and that he voluntarily came to the county jail to tell his side of the story.

His claim is that his constitutional rights were violated because he was not allowed to consult with an attorney prior to and at the time he gave the statements as required by the supreme court of the United States in *Escobedo v. Illinois* (1964), 378 U. S. 478, 84 Sup. Ct. 1758, 12 L. Ed. (2d) 977, and that without the statements the jury might well have returned a verdict of second-degree murder rather than first-degree. His further claim is that he was held an unreasonable length of time before being taken before a magistrate contrary to *McNabb v. United States* (1943), 318 U. S. 332, 63 Sup. Ct. 608, 87 L. Ed. 819, and *Mallory v. United States* (1957), 354 U. S. 449, 77 Sup. Ct. 1356, 1 L. Ed. (2d) 1479.

In *Escobedo* it is stated at pages 490, 491:

"No system worth preserving should have to *fear* that if an accused is permitted to consult with a lawyer, he will become aware of, and exercise, these rights. If the exercise of constitutional rights will thwart the effectiveness of a system of law enforcement, then there is something very wrong with that system.

"We hold, therefore, that where, as here, the investigation is no longer a general inquiry into an unsolved crime but has begun to focus on a particular suspect, the suspect has been taken into police custody, the police carry out a process of interrogations that lends itself to eliciting incriminating statements, the suspect has requested and been denied an opportunity to consult with his lawyer, and the police have not effectively warned him of his absolute constitutional right to remain silent, the accused has been denied 'the Assistance of Counsel' in violation of the Sixth Amendment to the Constitution as

'made obligatory upon the States by the Fourteenth Amendment,' *Gideon v. Wainwright,* 372 U. S., at 342, and that no statement elicited by the police during the interrogation may be used against him at a criminal trial."

Since the *Escobedo* opinion was handed down by the United States supreme court in June of 1964, this court has interpreted and applied *Escobedo* in several cases: *Browne v. State* (1964), 24 Wis. (2d) 491, 129 N. W. (2d) 175, 131 N. W. (2d) 169; *State ex rel. Goodchild v. Burke* (1965), 27 Wis. (2d) 244, 133 N. W. (2d) 753; *Neuenfeldt v. State* (1965), 29 Wis. (2d) 20, 138 N. W. (2d) 252; *Phillips v. State* (1966), 29 Wis. (2d) 521, 139 N. W. (2d) 41, and *State ex rel. Van Ermen v. Burke* (1966), 30 Wis. (2d) 324, 140 N. W. (2d) 737. As a generalization it can be said by virtue of these cases that this court has not extended the rule of *Escobedo* beyond the facts of *Escobedo* and that we have not applied it retroactively.

The opinions in two cases just announced by the United States supreme court, *Miranda v. Arizona* (June 13, 1966), 384 U. S. 436, 86 Sup. Ct. 1602, 16 L. Ed. (2d) 694, and *Johnson v. New Jersey* (June 20, 1966), 384 U. S. 719, 86 Sup. Ct. 1772, 16 L. Ed. (2d) 882, construe and extend *Escobedo* and fix the dates of application of both *Escobedo* and *Miranda.*

In *Miranda,* referring to *Escobedo,* Mr. Chief Justice WARREN, speaking for the majority, stated:

"This case has been the subject of judicial interpretation and spirited legal debate since it was decided two years ago. Both state and federal courts, in assessing its implications, have arrived at varying conclusions. A wealth of scholarly material has been written tracing its ramifications and underpinnings. Police and prosecutor have speculated on its range and desirability. We granted certiorari in these cases, 382 U. S. 924, 925, 937, in order further to explore some facets of the problems, thus exposed, of applying the privilege against self-incrimination to in-custody interrogation, and to give

concrete constitutional guidelines for law enforcement agencies and courts to follow."

In all fairness to the trial judge and trial counsel, it must be stated that Reimers was tried, convicted, and sentenced before the *Escobedo* decision was announced; and in fairness to counsel for both Reimers and the state, it must be acknowledged that this appeal had been fully submitted by brief and oral argument prior to *Miranda* and *Johnson*.

In *Johnson v. New Jersey, supra,* the court announced that neither *Escobedo* nor *Miranda* would be applied retroactively (p. 721) :

"In this case we are called upon to determine whether *Escobedo v. Illinois,* 378 U. S. 478 (1964), and *Miranda v. Arizona, ante,* p. 436, should be applied retroactively. We hold that *Escobedo* affects only those cases in which the trial began after June 22, 1964, the date of that decision. We hold further that *Miranda* applies only to cases in which the trial began after the date of our decision one week ago. The convictions assailed here were obtained at trials completed long before *Escobedo* and *Miranda* were rendered, and the rulings in those cases are therefore inapplicable to the present proceeding."

The judgments of conviction finding Reimers guilty of first-degree murder and aggravated assault were entered April 23, 1964, the trial having commenced on April 20, 1964. *Escobedo* was announced June 22, 1964. We hold, therefore, that the rule of *Escobedo* did not apply to the trial of Reimers.

No question is raised here as to the voluntariness of the statements given by Reimers under the test of *State v. Hoyt* (1964), 21 Wis. (2d) 284, 128 N. W. (2d) 645, and cases cited therein. The trial court did conduct an evidentiary hearing as to the voluntariness of the statements outside the presence of the jury. Upon ample credible evidence he found the statements were "voluntary" and properly received them in evidence.

*Miranda* does not apply to the case at hand, but because it sets forth the rules that must be adhered to by the law-enforcement officials and the courts of this state in all cases wherein the trial commenced after June 13, 1966, we deem it imperative that we make reference to it. Underlying the reasoning of *Miranda* are the Fifth amendment (privilege against self-incrimination), and the Sixth amendment (right to be represented by counsel) of the United States constitution made applicable to the states under the Fourteenth amendment of the United States constitution. *Miranda* is a long decision which discusses the ramification of the problem in detail. A capsule résumé of the rules that must be observed by the law-enforcement officials in the custodial interrogation of persons suspected or charged with a crime is stated by Mr. Chief Justice WARREN as follows:

"Our holding will be spelled out with some specificity in the pages which follow but briefly stated it is this: the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. As for the procedural safeguards to be employed, unless other fully effective means are devised to inform accused persons of their right of silence and to assure a continuous opportunity to exercise it, the following measures are required. Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently. If, however, he indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning. Likewise, if

the individual is alone and indicates in any manner that he does not wish to be interrogated, the police may not question him. The mere fact that he may have answered some questions or volunteered some statements on his own does not deprive him of the right to refrain from answering any further inquiries until he has consulted with an attorney and thereafter consents to be questioned."

Reimers contends that he was detained for an unreasonable length of time, and therefore illegally, before being brought before a magistrate. He was confined early Sunday morning, November 10th, and was not taken before a magistrate until 10 a. m. Tuesday, November 12th. Prior to this time he was not informed of the charges against him nor was he afforded counsel until the next day by the county court.

Our recent cases have not only held that if a confession or statement is obtained by virtue of the pressure of an unreasonable detention, the confession or statement cannot be used against him, but we have also condemned the practice generally as being a violation of due process.

We emphatically repeat here what was said in *State ex rel. Van Ermen v. Burke, supra,* pages 337, 338:

"In *McNabb v. United States* the United States supreme court first enunciated the rule that a confession, although voluntary, can be excluded if made during an illegal detention due to failure to promptly bring a prisoner before a committing magistrate. However, the rule was not based on any constitutional right, but was applied as a federal criminal procedure rule. In *State v. Bronston* this court determined that the *McNabb* rule was confined to federal criminal prosecutions and was not a limitation imposed upon the states by the due-process clause of the Fourteenth amendment. However, our language in the recent case of *Phillips v. State* makes it clear that our attitude has changed concerning this issue. Although still adhering to the *Bronston* interpretation of *McNabb,* we stated that an unreasonable detention is a deprivation of liberty without due process of law in violation of the Fourteenth amendment:

" 'While the *McNabb-Mallory* rule makes it improper to delay a suspect "in order to carry out a process of inquiry which lends itself, even if not so designed, to eliciting damaging statements to support the arrest and ultimately his guilt," the due-process clause does not foreclose completely the police from interrogating the person after arrest and before taking him before a magistrate. *But, the right to interrogate after arrest is limited and must be for the purpose of determining whether to release the suspect or if he has been arrested without a warrant to make a formal complaint.* An arrest upon warrant would seem to presuppose sufficient evidence and its purpose is to cause the arrested person to be brought before a magistrate, sec. 954.04, Stats., so that the criminal process of determining guilt or innocence can commence. *A detention for a period longer than is reasonably necessary for such limited purpose violates due process and renders inadmissible any confession obtained during the unreasonable period of the detention.*' (Emphasis supplied.)

"We condemn as unreasonable the long period of detention of petitioner before being charged. However, petitioner has raised no question as to the voluntariness of his statements. In a collateral attack proceeding such as this we do not accord retrospective effect to the holding in *Phillips* that a voluntary confession obtained during the unreasonable period of detention is inadmissible in evidence. Accordingly that holding is not applicable to petitioner in the instant case.

"It may be arguable that in order to prevent a pattern of police practice involving unreasonable lengths of detention, the court should order the absolute discharge of prisoners who have been so detained, whether or not a confession was obtained during the extended detention. We, however, reserve such question for further examination in a proper case where the issue of unlawful detention was timely raised during the course of trial." [Footnotes omitted.]

In this instance the confessions or statements cannot be excluded upon the ground of illegal detention. Exhibit 1, the written statement, was obtained and signed within a period of less than three hours after Reimers was confined. Clearly this was not detention for an un-

reasonable length of time. Exhibit 2, taken the next morning, is only a typewritten copy of Exhibit 1. Even if Exhibit 2 contained additional damaging information it could not be excluded on the basis of illegal detention. Exhibit 3, taken · at the request of the defendant on Tuesday, cannot be the basis of a reversal for two reasons: First, it was taken at the request of the defendant, and second, the statement does not refer to the incidents of the crimes for which he was convicted.

Upon its face, a detention from midnight Saturday until 10 a. m. Tuesday, without satisfactory explanation, would be unreasonable.

The explanation given is that a magistrate was not available November 10th because it was Sunday, and not available Monday, November 11th, because it was a legal holiday, Veterans Day, and that Reimers was taken before a magistrate in the morning of the first day the magistrate was available.

Sec. 256.15, Stats., provides a court shall not transact business on Sunday, the fourth of July, Christmas Day, or on a day of general election except for specified purposes. The section further provides: ". . . this section shall not prevent the exercise of jurisdiction of any magistrate when it shall be necessary, in criminal cases, to preserve the peace or arrest offenders." We conclude that the language of the exception is broad enough to permit a magistrate to advise a defendant of the charges against him and admit him to bail if requested to do so, even on the four prohibited days set forth above.

Sec. 256.17, Stats., designates November 11th as a "legal" holiday, together with several others. This section does not, however, prohibit any court from official acts on any of the legal holidays designated in the section.

While we are aware that magistrates cannot be available at all times in all localities, a reasonable effort should be made to accommodate the police and the defendants

so that a defendant may appear to be informed of the nature of the charge against him and be admitted to bail without an unreasonable delay. Henceforth, the fact that Sundays and holidays intervene, standing alone, will not justify unreasonable detention. We do not mean to infer that the police cannot hold an individual in custody for the purpose of interrogation, but the period must not be unreasonable under all the circumstances present.

In this instance, and for this case, we hold the length of the detention was not unreasonable but reemphasize this court cannot continue to countenance unreasonable detention.

In the appeal now before us, under the exclusionary rules applicable at the time of the trial, we find no reversible error and hold that the evidence amply supports the convictions.

*By the Court.*—Judgments and orders affirmed.