STATE, Appellant, v. LA FERNIER, Respondent.

*November 30—December 22, 1967.*

370

For the appellant the cause was argued by *Betty R. Brown,* assistant attorney general, and *Walter J. Swietlik,* district attorney of Ozaukee county, with whom on the brief were *Bronson C. La Follette,* attorney general, and *William A. Platz,* assistant attorney general.

For the respondent there was a brief by *Roland J. Steinle, Jr.,* of Milwaukee, and *Lowell K. Levy* of Cedarburg, and oral argument by *Mr. Steinle.*

HANLEY, J.    These two issues are presented by this appeal: (1) Did the trial court err in granting a new trial in the interest of justice; and (2) did the trial court err in holding that the oral and written confessions were inadmissible in evidence?

*Order Granting a New Trial.*

Sec. 270.49 (1), Stats., provides that new trials may be granted on any of four grounds: (1) Errors in the trial; (2) verdict contrary to law or evidence; (3) excessive or inadequate damages; and (4) in the interest of justice.

Sec. 270.49 (2), Stats., provides as follows:

"Every order granting a new trial shall specify the grounds therefor. In the absence of such specification, the order shall be deemed granted for error on the trial. No order granting a new trial in the interest of justice shall be valid or effective, unless the reasons that prompted the court to make such order are set forth in detail therein or the memorandum decision setting forth such reasons is incorporated by reference in such order. The court may grant or deny costs to either party."

In all cases, with the exception of those in which a new trial is granted in the interest of justice, it is sufficient for the order granting a new trial to state the statutory grounds therefor. If the ground is "in the interest of justice," the reason that prompted the court to make such order must be set forth therein. *Boughton v. State Farm*

*Mut. Automobile Ins. Co.* (1959), 7 Wis. 2d 618, 97 N. W. 2d 401. Thus, the order here is valid insofar as it grants a new trial for errors on the trial.

The trial court's "incorporation by reference" of the oral opinion was apparently an attempt to comply with sec. 270.49 (2), Stats., as it applies to new trials in the interest of justice. But no memorandum decision was on file at the time the order granting a new trial was entered, nor does it appear that such a decision was filed at any time. In this situation, *Campbell v. Wilson* (1962), 18 Wis. 2d 22, 117 N. W. 2d 620, is controlling and the oral decision is not incorporated into the order for it was neither transcribed nor filed at the time the order was made. Thus, the reasons for which a new trial in the interest of justice was granted must be restricted to the grounds set forth in the order, namely, the testimony of Mrs. Helen Hames on rebuttal that while Mr. La Fernier was in the army his superior officers had sent him for a mental observation; testimony elicited from Mr. La Fernier on cross-examination indicating that he had an uncontrollable temper and that his sexual activities may have been unusual; and the closing argument of the district attorney regarding the defendant's guilt and the danger of his being permitted to return to society.

We see no merit to the state's contention that the reasons given by the trial court for granting a new trial in the interest of justice are insufficient. The trial court was of the opinion that Mrs. Hames' volunteered testimony to the effect that her former husband was sent to take a mental examination seriously damaged the defendant's rights. At the time the testimony was volunteered, defendant's counsel moved for a mistrial which was denied by the trial court for purposes of letting the case go to the jury. We think on this ground alone the order granting a new trial can be sustained. A doubt cast upon the mental health of the defendant could well have suggested to the jury that he was such a person

who was likely to commit incest. The general run of mankind undoubtedly associates incest with a demented mind.

We think the instant case is a prime example of where the trial judge's discretion should be allowed to stand. This being the case, it is unnecessary to consider any of the other alleged errors.

In *Quick v. American Legion 1960 Convention Corp.* (1967), 36 Wis. 2d 130, 152 N. W. 2d 919, the supreme court recently reiterated the principles applicable to review of orders of the trial court granting new trials in the interest of justice. An order granting a new trial in the interest of justice will be affirmed unless there is a clear abuse of discretion. On review the supreme court seeks not to sustain the verdict of the jury but looks for reasons to sustain the findings and order of the trial judge.

*Admissibility of the Defendant's Statements.*

The defendant was taken into custody at 3:30 p. m., on June 30th. He made the oral statement that he committed incest on June 16th, shortly after 9:45 a. m., on July 1, 1966. He had not yet been taken before a magistrate nor had he been advised of his constitutional rights. At the hearing to determine the voluntariness of the statements, only Officer Niesen testified. With respect to the oral statement, his testimony was that he had seen the defendant on July 1, 1966, at the Ozaukee county jail, that defendant had been arrested on June 30, 1966, on a charge of incest and that to the best of his knowledge, he had been incarcerated continuously since 3:30 p. m., on June 30th, until he (Officer Niesen) saw the defendant again on July 1st. The officer testified as to why he saw the defendant on July 1st:

"*Q.* What was the reason for your seeing Mr. La Fernier at 9:45 A. M. on the 1st of July? *A.* He had been contacted on the 30th of June after he was booked at

the County Jail, I had interviewed Mr. La Fernier and I had asked him to submit to a polygraph examination."

When the defendant was first asked if he cared to take the polygraph examination, he stated he would be only too glad to take it. Thereupon Officer Niesen contacted a polygraph operator to set up an appointment for the following morning, July 1st. On the morning of July 1st, Officer Niesen arrived at the department at 9:45 a. m. and brought the defendant down to the interrogation room where the polygraph machine had been set up.

"*Q.* What happened when you arrived at the Port Washington Police Department? *A.* I brought Mr. La Fernier into the interrogation room and showed him a seat where he could be seated, and at that time he made a spontaneous statement that he was in the County Jail overnight and he was thinking about this, this charge against him, and at that time he says he believes that he did commit one of these offenses on the 16th of June, 1966."

The officer stated that he personally had asked no question of the defendant prior to his making the statement nor had anyone else in his presence.

This was the only testimony at the hearing concerning the oral statement. At one point, defendant's attorney moved the court to rule that the written confession was inadmissible while attempting to reserve his right to cross-examine the witness, Officer Niesen, who was still on the stand. Thus the motion was considered analogous to a motion to dismiss at the end of the plaintiff's case for failure of proof. In the ensuing colloquy the court ruled that both confessions were inadmissible.

In *Miranda v. Arizona* (1966), 384 U. S. 436, 86 Sup. Ct. 1602, 16 L. Ed. 2d 694, the United States Supreme Court has laid down procedural safeguards for the protection of an accused's right not to incriminate himself and has held that failure to observe such safeguards shall result in the inadmissibility of any statements he might make. The holding is as follows, at pages 444 and 445:

"Our holding will be spelled out with some specificity in the pages which follow but briefly stated it is this: the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. As for the procedural safeguards to be employed, unless other fully effective means are devised to inform accused persons of their right of silence and to assure a continuous opportunity to exercise it, the following measures are required. Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently. If, however, he indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning. Likewise, if the individual is alone and indicates in any manner that he does not wish to be interrogated, the police may not question him. The mere fact that he may have answered some questions or volunteered some statements on his own does not deprive him of the right to refrain from answering any further inquiries until he has consulted with an attorney and thereafter consents to be questioned."

Since the trial in this case began after the decision in *Miranda* was handed down, *Miranda* is applicable to this case. *Johnson v. New Jersey* (1966), 384 U. S. 719, 86 Sup. Ct. 1772, 16 L. Ed. 2d 882; *Reimers v. State* (1966), 31 Wis. 2d 457, 143 N. W. 2d 525.

There is no question here but that the defendant was in custody; the main problem is, rather, whether "custodial interrogation" had begun—thus necessitating the warnings—at the time the oral confession was made. The testimony of the officer indicates the defendant was "interviewed" the day before he confessed and was asked

if he wanted to take a lie detector test. We think this is sufficient custodial interrogation to require the warnings to be given at that time. The state argues that since the oral statement was made at a time when the defendant was not being questioned, his statement is voluntary. Suppose, however, that a suspect is subjected to a grilling examination at which the police intimate that the case against him is strong and that he nevertheless does not confess until one hour after the questioning ceases, when he "volunteers" his statement. We do not think anyone would contend his confession is voluntary. The difference between the hypothetical and the case at bar is one of degree. We interpret the language "prior to any questioning" to mean just that and would exclude the oral statement given here. The questioning need not relate to the specifics of the crime for the psychological coercion inherent in custodial interrogation to result. Nor does it only result when the confession immediately follows the interrogation.

Defendant also made a written confession subsequent to his oral statement. Prior to this statement, he was warned of his right to remain silent and warned that whatever he might say could be held against him in a court of law. He was also warned of his right to counsel and told that if he could not afford counsel one would be retained for him at state expense. He then indicated he would like to engage counsel.

"Q. [by the district attorney] Then what happened? A. I explained to him that we in the Police Department would like to go about this—

"Q. (Interrupting) Would like to what? A. Would like to investigate this case with the least amount of publicity and not blow it up in the public's view, and after I told him this, Mr. La Fernier said he would give me a statement, and proceeded to give me one."

*Miranda* further states at page 474:

". . . If the individual states that he wants an attorney, the interrogation must cease until an attorney is

present. At that time, the individual must have an opportunity to confer with the attorney and to have him present during any subsequent questioning. If the individual cannot obtain an attorney and he indicates that he wants one before speaking to police, they must respect his decision to remain silent."

*Miranda* does not exclude the possibility that an accused may waive his rights, but the waiver may not be sought by further use of "compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." *Miranda v. Arizona, supra,* at page 467.

However, we view Officer Niesen's comment to the defendant that the police "Would like to investigate this case with the least amount of publicity and not blow it up in the public's view" not as psychological coercion but merely as motivation. The statement was not made in the nature of a threat but rather in the nature of a suggestion. Defendant was free to reject or accept it.

From the facts of record we are satisfied the defendant intelligently waived his right to remain silent and volunteered the written confession. However, we are precluded from making that determination since counsel for the defendant reserved the right to cross-examine the witness, Officer Niesen, at the time counsel requested the trial court to hold inadmissible the written confession. Defendant should be given the opportunity of cross-examination and to submit any defense testimony for the trial court's consideration.

The state contends that defendant's counsel, on cross-examination of the complaining witness, improperly inquired whether the witness had ever had sexual relations before June 16th, the date of the first offense and that the trial court erred in allowing the question and directing the witness to answer. We are of the opinion that the question should not have been permitted, since evidence of prior sexual acts with other men are completely im-

proper in incest and statutory rape cases, where consent is no defense to the crime. *See* 42 C. J. S., *Incest*, p. 514, sec. 15; 44 Am. Jur., *Rape*, p. 959, sec. 91; *State v. Sabala* (1966), 32 Wis. 2d 95, 99, 145 N. W. 2d 95.

Since a new trial is granted to the defendant, the trial court is directed to conduct a further hearing as to the admissibility of the written confession following the procedure recommended in *State ex rel. Goodchild v. Burke*, *supra*, which hearing shall cover the whole question of the voluntariness of the confession and any waiver associated therewith.

*By the Court.*—The order granting a new trial in the interest of justice and the order holding inadmissible the oral confession are affirmed, and the order holding inadmissible the written confession is reversed with directions.

HALLOWS, J. (*dissenting*). I consider the reasons given for granting a new trial in the interest of justice to be wholly insufficient and the action a clear abuse of discretion.