Sᴛᴀᴛᴇ of Wisconsin,
Plaintiff-Respondent,

v.

Giancarlo Gɪᴀᴄᴏᴍᴀɴᴛᴏɴɪᴏ,
Defendant-Appellant.†

Court of Appeals

*No. 2015AP968–CR. Submitted on briefs March 1, 2016.
—Decided July 12, 2016.*

2016 WI App 62

† Petition for Review filed.

452

453

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Michael G. Levine,* and *Matthew S. Pinix* of *Law Offices of Robert A. Levine,* Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Sarah L. Burgundy,* assistant attorney general, and *Brad D. Schimel,* attorney general.

Before Curley, P.J., Kessler and Brennan, JJ.

¶ 1. BRENNAN, J.   Giancarlo Giacomantonio appeals from a judgment of conviction of sexual exploitation of a child, contrary to WIS. STAT. § 948.05(1)(a) (2013–14), entered after a jury trial.[1] Giacomantonio contends on appeal that: (1) photographs of text messages found on the victim's phone should have been excluded because they were unauthenticated, unoriginal, and hearsay; and (2) his right to present a

---

[1] All references to the Wisconsin Statutes are to the 2013–14 version unless otherwise noted.

defense was infringed upon when the trial court refused to conduct an *in camera* review of the victim's mental health records.[2]

¶ 2. We affirm because we conclude: (1) the proper foundation was laid for authentication of the photographs of text messages; and (2) the trial court did not err in refusing to conduct an *in camera* review of the victim's mental health records because the defendant failed to satisfy his burden of showing materiality to the defense as set forth in *State v. Shiffra*, 175 Wis. 2d 600, 608–09, 499 N.W.2d 719 (Ct. App. 1993) and *State v. Green*, 2002 WI 68, ¶¶ 32–34, 253 Wis. 2d 356, 646 N.W.2d 298. We discuss each issue in turn below.

## BACKGROUND

¶ 3. On October 15, 2014, a jury convicted Giacomantonio of sexual exploitation of a child. He was sentenced to eight years of imprisonment with five years of initial confinement and three years of extended supervision. The acts occurred between November 2, 2012, and September 6, 2013, when the victim was between the ages of fifteen and sixteen years old. He had also been charged with, and found not guilty of, incest with child by step-parent.

¶ 4. For some time, the victim's mother suspected that her husband, Giacomantonio, had been sexually abusing the victim, who had attempted to

---

[2] All pretrial conferences and motions were presided over by the Honorable Stephanie G. Rothstein; the jury trial was presided over by the Honorable Jeffrey A. Wagner.

commit suicide in December 2012.[3] The victim then underwent psychiatric and psychological counseling from that time forward. On September 6, 2013, the victim's mother found some "alarming texts" on the victim's cellphone and took the phone to the Whitefish Bay Police Department. The victim's mother had access to the phone's contents because "[t]he phone did not have a lock." She turned the phone over to police.

¶ 5.  A detective searched the victim's phone at the police station. The detective's search located texts from the defendant's cellphone to the victim's cellphone saying "I want my booty" and "I want my boty." The detective took screen shots of the text messages on the victim's cellphone. The detective looked at the text messages on the victim's phone rather than sending it directly to the Department of Justice crime lab because he had the victim's and her mother's consent to do so and in order to investigate the claims being made. The police attempted to obtain records from the telephone company showing the text messages sent from or received by the victim's phone, but no such records existed.

¶ 6.  Giacomantonio filed a pretrial motion seeking to exclude from evidence certain text messages found on the victim's cellphone. The trial court denied that motion. At trial, Giacomantonio again objected to the text message evidence. Seven photographs of the phone's screen showing the text messages were entered into evidence at trial. At trial, the detective who took the photographs read the text messages and identified the phone numbers associated with each

---

[3] At the time of these events, Giacomantonio and the victim's mother were undergoing a marital separation and staying in separate rooms in the home.

message. There was also testimony that the victim, her mother, and her cousin had access to one or both of these phones as well.

¶ 7. The victim identified one phone number as belonging to Giacomantonio's phone and the other phone number as belonging to her phone.[4] A summary of those messages is as follows:

August 7 1:45 a.m. to victim's phone from Giacomantonio's phone:   "Come to my room."

August 7 1:46 a.m. to Giacomantonio's phone from victim's phone:   "No. Im about to go to sleep."

August 8 1:27 a.m. to victim's phone from Giacomantonio's phone:   "I want my boty[.]"

August 8 12:53 p.m. to victim's phone from Giacomantonio's phone:   "I want my booty today."

August 8 12:54 p.m. to Giacomantonio's phone from victim's phone:   "Why."

August 8 12:58 p.m. to victim's phone from Giacomantonio's phone:   "Why not? I got plans for you and [P]."[5]

August 8 2:08 p.m. to victim's phone from Giacomantonio's phone:   "Can I have my booty?"

Giacomantonio argued that these messages could not be properly authenticated and argued that the rules of evidence required the State to produce the original text messages, not copies thereof. The trial court concluded that authentication was not an issue because the victim was available for cross-examination

---

[4] At the time the detective read these messages, no evidence had been offered connecting a specific phone number to a specific phone or to a specific person; the victim's testimony identifying the phone numbers came at a later point in the trial.

[5] P. was the victim's girlfriend at that time.

and Giacomantonio could question her and the other witnesses regarding whether "the victim or another has falsely manufactured these text conversations." Giacomantonio also objected based on hearsay, and the trial court overruled his objection.

¶ 8. The victim testified that Giacomantonio would "oftentimes" text her "to go to his room late at night," and that "he sent [text messages] all the time" about her "booty." She testified that if she refused to provide Giacomantonio with photos of her bare buttocks and vagina, which he referred to as her "booty" or "boty," he would withhold affection and prevent her from seeing her friends; if she complied with his demands, he would be more supportive and more lenient, and would supply her and her friends with alcohol.

¶ 9. Pretrial, Giacomantonio also moved for an *in camera* review of the victim's mental health records. The trial court denied the motion. Giacomantonio petitioned this court for leave to appeal, and the petition was denied. *See State v. Giacomantonio*, No. 2014AP11–CRLV, unpublished slip op. (WI App Jan. 29, 2014).

¶ 10. Giacomantonio argued that the victim's mental health records were likely to show whether she was being truthful about her relationship with Giacomantonio. Further, he argued that if the victim had discussed Giacomantonio's crime, the therapist would have been required, by law, to disclose that information pursuant to Wisconsin's mandatory reporting law, Wis. Stat. § 48.981(2)(a)11.

¶ 11. The trial court denied Giacomantonio's motion, reasoning that the victim's mental health records would be cumulative. The court stated:

[T]his defendant does have additional other avenues by which to pursue the facts, as he alleges them to be, that might impugn this victim's credibility. And for this Court to even find that there is a sufficient showing here to merit an in-camera review, I think, would thwart the process entirely.

There would be very little point in having a two-step process like this. There would be very little point in having the defendant having to meet any burden at all if the Court were to deem that this was sufficiently met in this situation.

¶ 12. The "other avenues" the court suggested were Giacomantonio's "independent[] aware[ness] of [the victim's] suicide attempts" and her "relationship with another minor that apparently [the victim's] mother feels is inappropriate and has apparently, according to [Giacomantonio], been untruthful about the nature of that relationship." Giacomantonio contends that without the *in camera* review, he is unable to dispute the victim's claim that she attempted suicide because of him and her claim that she felt controlled and manipulated by him such that he was able to induce her to illicit sexual behavior.

## DISCUSSION

¶ 13. On appeal, Giacomantonio raises two issues: (1) that the photographs of text messages found on the victim's phone should have been excluded because they were unauthenticated, unoriginal, and hearsay; and (2) that Giacomantonio's right to present a defense was infringed upon when the trial court refused to conduct an *in camera* review of the victim's treatment records.

¶ 14. The State counters, as to the first issue, that it adequately authenticated the text messages

461

through the victim's testimony; that the messages came from a number she recognized as Giacomantonio's; and that the content was consistent with things that he had said to her in the past. Additionally, Giacomantonio's best-evidence argument fails because the screen shots were admissible under the circumstances. Finally, law enforcement's reciting the text messages at trial was not hearsay.

¶ 15.   As to the second issue, the State argues that Giacomantonio failed to satisfy his burden to obtain an *in camera* review of the victim's mental health records under *Shiffra*, 175 Wis. 2d at 608–09, and *Green*, 253 Wis. 2d 356, ¶¶ 32–34.

¶ 16.   On both issues, we agree with the State, as discussed further below. Accordingly, we affirm each of the trial court's rulings.

## 1.   Photographs of text messages

¶ 17.   The trial court has "broad discretion to admit or exclude evidence," and this court may overturn its decision only if the trial court erroneously exercised its discretion. *See State v. Kandutsch*, 2011 WI 78, ¶ 23, 336 Wis. 2d 478, 799 N.W.2d 865 (citation omitted). This court upholds the trial court's decision to admit evidence "if the [trial] court examined the relevant facts, applied a proper legal standard, and, using a demonstrated rational process, reached a reasonable conclusion." *Martindale v. Ripp*, 2001 WI 113, ¶ 28, 246 Wis. 2d 67, 629 N.W.2d 698.

¶ 18.   Giacomantonio poses three questions regarding the admissibility of the photographs of the text messages:   (1) whether the text messages were

properly authenticated; (2) whether the photographs of the text messages offended the best evidence rule; and (3) whether a police officer's oral testimony as to the content of the text messages was hearsay. We discuss each in turn below.

### a. The text messages were properly authenticated.

¶ 19. Giacomantonio first argues that the text messages were not authenticated and were, thus, inadmissible. He acknowledges case law holding that electronic correspondence, including text messages, does not warrant different or more stringent authentication rules than those that are used to authenticate other sorts of correspondence. *See, e.g., State v. Thompson*, 777 N.W.2d 617, 624–25 (N.D. 2010) (collecting cases); *Commonwealth v. Koch*, 39 A.3d 996, 1004 (Pa. Super. Ct. 2011), *aff'd by an equally divided court*, 106 A.3d 705 (Pa. 2014). He concedes that we must apply Wisconsin law, namely Wis. Stat. §§ 909.01 and 909.015. Nevertheless, he points to law in other jurisdictions that "requires more than mere confirmation that the number or address belonged to a particular person" when authenticating electronic communications. *See Koch*, 39 A.3d at 1005. He goes on to discuss several cases from other jurisdictions, but we do not need to look further than Wisconsin law, which, as Giacomantonio points out, allows circumstantial evidence for authentication. *See State v. Baldwin*, 2010 WI App 162, ¶ 55, 330 Wis. 2d 500, 794 N.W.2d 769.

¶ 20. The State argues that Wis. Stat. §§ 909.01 and 909.015 provide the framework for authentication. Section 909.01 provides that "[t]he requirements of authentication or identification as a condi-

tion precedent to admissibility are satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." One way to lay a foundation is through the "[t]estimony of a witness with knowledge that a matter is what it is claimed to be." WIS. STAT. § 909.015(1). Additionally, authentication can be done through circumstantial evidence. *See Campbell v. Wilson*, 18 Wis. 2d 22, 30 n.1, 117 N.W.2d 620 (1962); *see also* WIS. STAT. § 909.015(4) (examples of authentication include "[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances").

¶ 21.   We conclude that the authentication was properly established here through circumstantial evidence. The detective testified that he saw the text messages when the victim's mother brought the phone to him, that he took the screen shots of the messages, and that the screen shots accurately depicted the text messages he viewed. That testimony, the State argues, and we agree, sufficiently authenticated the screen shots as to their accuracy in representing what the detective saw on the phone.

¶ 22.   Next, the victim testified that Giacomantonio was the author. The victim testified to the phone number that was associated with Giacomantonio's phone, that she understood the messages had come from him, and that the messages used in the exhibits at trial were typical messages she would receive from him. She testified that Giacomantonio often texted her requests to come to his room late at night and that he told her he wanted his "booty" "all the time," which she understood to mean that he wanted to touch her. Her testimony, in its description of distinctive language "booty" and "boty" and repeated sub-

stance or content—namely, the consistent and persistent calls to his room for sex—was sufficient circumstantial evidence to allow a reasonable jury to find that Giacomantonio was the author of those messages. *See Campbell*, 18 Wis. 2d at 30 n.1; *see also* Wis. Stat. § 909.015(4).

¶ 23. Additionally, circumstantial evidence as to the timing of the messages supported a finding that Giacomantonio likely wrote the messages. For example, the first message read "Come to my room" and was sent during the early morning hours of August 7. That language and the timing suggest that someone in the victim's home wrote it because of the specificity of the location "room." That writer was likely Giacomantonio, given that the message came from his phone number and that he stayed in a room separate from the victim and from her mother. The "I want my boty" message the next morning at a similar time likely came from the same writer as the previous message, given the early morning timing, and it follows that the other messages referencing "booty" likely came from the same writer. Further, one of the messages references by name the victim's girlfriend at the time, about whom Giacomantonio had known.

¶ 24. Given all of the circumstantial evidence related to the text messages, the trial court did not erroneously exercise its discretion in denying Giacomantonio's motion *in limine* and authentication arguments. Additionally, Giacomantonio did not deny that the phone number was his or claim that those messages did not appear on the victim's phone. The trial court appropriately ruled that as a participant in the text conversations, the victim could authenticate the messages and that any arguments that the messages had been fabricated went to the weight of the

evidence, not to its admissibility under authentication principles. Giacomantonio was welcome to cross-examine the victim or any other person regarding whether the text messages had been altered or falsely manufactured.

¶ 25. As to Giacomantonio's argument that the trial court conflated authentication with weight, he demands too much of the authentication rule. Authentication involves a threshold of proof merely "sufficient to support a finding that the matter in question is what its proponent claims." WIS. STAT. § 909.01. The evidence presented here was sufficient to allow a reasonable jury to conclude that the text messages were on the victim's phone as her mother discovered them and that Giacomantonio probably wrote them. Once the texts were admitted, the jury was left to resolve whether he actually wrote the messages, what he meant by them, and how that weighed in its determination of whether he was guilty of the charges.

¶ 26. As to the out-of-state authority that Giacomantonio cites, the authentication here was consistent with those courts as well. Giacomantonio himself concedes that courts have determined that text messages do not "warrant different or more stringent authentication rules than those that are used to authenticate other sorts of correspondence." Collectively, those courts have agreed that text message authentication is a low standard that can be achieved with the sort of testimonial evidence of a witness with knowledge and circumstantial evidence that was presented here.[6] Additionally, those courts

_____

[6] *See, e.g., Smith v. Smith*, No. 2140028, 2015 WL 1525213 at *11 (Ala. Civ. App. Apr. 3, 2015) (holding that text messages were authenticated by direct evidence that sender's number was associated with party opponent and circumstantial evi-

have generally agreed that text and other electronic messages do not require new rules on authentication. *See, e.g., Thompson*, 777 N.W.2d at 625–26 (collecting cases). We agree.

¶ 27.  Giacomantonio relies heavily on *Koch*, a Pennsylvania Superior Court case, for his argument that despite the general rule that authentication can be established with testimony from a witness with knowledge, more is required here. However, we conclude that *Koch* is factually distinguishable from this case.[7] In *Koch*, the text messages were not adequately authenticated because there was no testimony from

dence from recipient of context and content of texts); *State v. Thompson*, 777 N.W.2d 617, 624–26 (N.D. 2010) (holding that victim's testimony as recipient of messages as to knowledge of defendant's phone number and circumstances of the day they were sent was sufficient to authenticate the messages and collecting similar out-of-state and federal cases); *State v. Bickerstaff*, No. 2014–A-0054, 2015 WL 5728518 at *4 (Ohio Ct. App. Sept. 30, 2015) (holding that recipient's testimony of content and context of text messages was sufficient to authenticate them); *Dickens v. State*, 927 A.2d 32, 37 (Md. Ct. Spec. App. 2007) (finding adequate foundation with direct evidence that message came from number associated with defendant's phone and circumstantial evidence in the messages' content and context); *Butler v. State*, 459 S.W.3d 595, 603 (Tex. Crim. App. 2015) (finding authentication with recipient's understanding that context and content of messages identified the defendant as the sender, evidence that the defendant had called the recipient from that number in the past, and fact that no one else had motive to send those particular messages to the recipient).

[7] Giacomantonio also relies on *State v. Francis*, 455 S.W.3d 56, 71–72 (Mo. Ct. App. 2014), wherein the State believed it had authenticated the text messages simply by the defendant's admission the phone was his, which was not sufficient. Here, we have the additional circumstantial evidence that *Francis* lacked.

either the sender or the recipient of the messages, there were no clues in the messages' content to indicate that the defendant likely wrote them, and the content of some of the messages suggested that someone other than the defendant wrote some of the messages. *See Koch*, 39 A.3d at 1003, 1005. As previously discussed, in the instant case the victim testified, there was circumstantial evidence that Giacomantonio wrote the messages, and there was no evidence that someone other than him wrote the messages.

¶ 28. In summary, the out-of-state cases that Giacomantonio relies upon support our conclusion here that the trial court did not erroneously exercise its discretion in finding that the State satisfied authentication requirements for the photographs of the text messages.

### b. The photographs of text messages complied with the best evidence rule.

■

¶ 29. Giacomantonio next argues that the photographs of the text messages did not comply with Wisconsin's best evidence rule because in order to prove the content of a writing, recording, or photograph, the "original is required." Wis. Stat. § 910.02. *See also State v. Ford*, 2007 WI 138, ¶ 63, 306 Wis. 2d 1, 742 N.W.2d 61. Instead of displaying the photographs of the text messages to the jury, Giacomantonio argues, the State should have used the phone itself to display the text messages.

¶ 30. The State counters that Giacomantonio's argument fails for a few reasons. Preliminarily, Giacomantonio did not argue to the trial court that

the State should have showed the text messages displayed on the phone itself. Instead, he argued to the trial court that the State should have provided "a complete transcription of the text messaging conversation." He cannot fairly complain now that the trial court should have adopted a different solution. *See State v. Ndina*, 2009 WI 21, ¶¶ 28–30, 315 Wis. 2d 653, 761 N.W.2d 612 ("[S]ome rights are forfeited when they are not claimed at trial; a mere failure to object constitutes a forfeiture of the right on appellate review."). Secondly, the State argues that the screen shots can be considered "originals" under the definition of "original" set forth in WIS. STAT. § 910.01(3): "[i]f data are stored in a computer or similar device, any printout or output readable by sight, shown to reflect the data accurately, is an 'original.' " We agree. A cell phone is a "computer or similar device," the screen shots are "output readable by sight," and according to testimony, the screen shots reflected the data accurately. *See, e.g., Steele v. Lyon*, 460 S.W.3d 827, 831 (Ark. Ct. App. 2015) (holding that screen shots of text messages satisfied "printout or . . . output" rule defining originals for best-evidence purposes).

¶ 31. We also agree with the State that even if the screen shots were considered duplicates, there is no "genuine question . . . as to the authenticity of the original" barring their use. *See* WIS. STAT. § 910.03 (stating that a duplicate is admissible to the same extent as an original unless there is a genuine question raised as to the original's authenticity). Giacomantonio does not dispute that the text messages were on the victim's phone nor does he contend that the screen shots show something different from what was on the phone; instead, he contends that other people had

469

access to the phone—a problem that would remain even if the jury were shown the phone itself instead of the screen shots.[8]

■

¶ 32. "The purpose of the best evidence rule is to prevent fraud on the trier of fact, depriving it of the benefit of the original document." *Grunwaldt v. State Highway Comm'n*, 21 Wis. 2d 153, 163, 124 N.W.2d 13 (1963). Because Giacomantonio never asserted that the screen shots do not accurately depict the content of the messages on the phone, the best evidence rule does not demand that the State present the messages on the phone itself or some sort of forensic printout. Even if the text messages had been altered, the phone or a printout would not necessarily display a more trustworthy version of the messages than what appeared in the screen shots. Accordingly, the trial court did not erroneously exercise its discretion in permitting the State to present the text messages as screen shots.

### c. The police officer's testimony as to the content of the text messages was not hearsay.

■

¶ 33. Giacomantonio argues that the detective's testimony about the contents of the text messages was hearsay contrary to Wis. Stat. § 908.01(3). He contends that the only purpose for offering the text messages into evidence was to prove the truth of the matter asserted, namely that Giacomantonio "did induce [the

---

[8] Arguably, the problem could have been made even worse if the jury were allowed access to the phone.

victim] to engage in sexually explicit conduct for the purpose of recording or displaying in any way the conduct."

¶ 34. The State counters that it admitted the content of the text messages through the detective's testimony not for the truth of the matter asserted, i.e., that Giacomantonio wanted the victim to come to his room and that he wanted his "booty," but rather for the detective to explain what led him to open an investigation based on what he saw on the phone. *See, e.g., State v. Medrano*, 84 Wis. 2d 11, 19–20, 267 N.W.2d 586 (1978) (testimony is proper when not offered for the truth of the matter asserted but to explain subsequent actions).

¶ 35. We agree with the State. The relevance of the texts was that the contact was made by Giacomantonio and the timing of when the contact was made. The State did not rely on the content of the texts to prove exploitation; it relied on the victim's testimony for that. According to the detective's testimony, he took the screen shots of the text messages "to preserve them for evidence and also present it to . . . the D.A.[] at the time of charging." The screen shots were authenticated through the detective's testimony stating they were the messages he saw on the phone. The screen shots were then entered as exhibits, and the detective's reading of them was nothing more than merely reading a document. Accordingly, the trial court properly exercised its discretion in overruling Giacomantonio's hearsay objections.

### d. Any error in admitting the content of the text messages was harmless.

■

¶ 36.   Lastly, Giacomantonio argues that he was prejudiced by admission of the text message evidence because a large portion of the State's case relied upon the photographs of the text messages and that this evidence was used to prove inducement. His argument is that because this text message evidence was key to the State's case, Giacomantonio was prejudiced by its admission.

¶ 37.   The State argues that it used the text messages primarily to support the incest charge, which resulted in an acquittal, and, therefore, the text messages were harmless. The State also used the texts to counter Giacomantonio's defense that the victim and her mother had fabricated the allegations to get him out of their lives. The State further argues that the texts cannot have figured significantly into the jury's verdict on the exploitation count because it relied primarily on other evidence, namely the images themselves and the victim's testimony that Giacomantonio induced her to take and send the photos through emotional blackmail. The State also points out that it acknowledged that the messages could be "interpreted [in] different ways. Maybe it's nothing." The victim did not testify that Giacomantonio took pictures of her late at night or in his room, or that the message conversations had anything to do with him requesting images. Instead, she testified that the texts related to Giacomantonio wanting her to come to his room so he could touch her.

¶ 38. Evidence is not prejudicial merely because the defendant dislikes the evidence that was presented. And even if the trial court had erroneously exercised its discretion in deeming evidence of the text messages' content admissible, we may not reverse "unless an examination of the entire proceeding reveals that the admission of the evidence has 'affected the substantial rights' of the party seeking the reversal." *State v. Armstrong*, 223 Wis. 2d 331, 368, 588 N.W.2d 606 (1999) *(modified on reconsideration on other grounds)* (quoting WIS. STAT. § 805.18(2)). In order to support reversal, there must be a "reasonable probability that, but for . . . [the] errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 369 (citation and quotation marks omitted).

¶ 39. In this case, to prove the exploitation count, the State relied primarily on the victim's testimony that Giacomantonio sent her texts at those times to induce her to take and send him the photos. It was not the content of the text messages, but rather the victim's testimony that led to his exploitation conviction. Accordingly, even if the trial court had erroneously exercised its discretion in admitting the photographs of the text messages, such error was harmless.

## 2. Mental health records

¶ 40. We apply a mixed standard of review to a trial court's determination regarding a request for an *in camera* inspection of mental health records; we consider the trial court's factual findings "under the

clearly erroneous standard," and we review *de novo* the question of law which is implicated by a defendant's constitutional right to a fair trial. *See Green*, 253 Wis. 2d 356, ¶ 20. For mental health records to have been admissible, Giacomantonio would have had to meet the requirements set forth in *Shiffra* and *Green*. Giacomantonio fails to demonstrate on appeal that he could have met that showing.

¶ 41.  In *Shiffra*, this court held that a defendant may obtain *in camera* inspection of a victim's privileged medical records by making a preliminary showing that the records are material to the defense. *Id.*, 175 Wis. 2d at 608. In *Green*, our supreme court clarified that the preliminary showing of materiality requires the defendant to show "a 'reasonable likelihood' that the records will be necessary to a determination of guilt or innocence." *Id.*, 253 Wis. 2d 356, ¶ 32 (citation omitted). The court further explained that "a defendant must set forth a fact-specific evidentiary showing, describing as precisely as possible the information sought from the records and how it is relevant to and supports his or her particular defense." *Id.*, ¶ 33. The showing must be based on more than "mere speculation or conjecture as to what information is in the records" or a "mere contention that the victim has been involved in counseling related to prior sexual assaults or the current sexual assault." *See id.* Giacomantonio sets forth no specific facts from the record of information he seeks. He merely speculates that there may be evidence of her failure to report abuse to the counselor. But that is insufficient under *Green*.

¶ 42.  Despite the clear standard set forth in *Green*, Giacomantonio argues that his request for an *in camera* review of the victim's mental health record is supported by *State v. Speese*, 191 Wis. 2d 205, 224, 528

N.W.2d 63 (Ct. App. 1995) (*Speese I*), *reversed on other grounds by* 199 Wis. 2d 597, 545 N.W.2d 510 (1996) (*Speese II*). *See also State v. Lynch*, 2015 WI App 2, ¶¶ 31–32, 359 Wis. 2d 482, 859 N.W.2d 125). In *Speese I*, the court concluded that the victim's treatment records "may be necessary to a fair determination of Speese's guilt or innocence" because the victim was in therapy when the alleged abuse occurred and seemingly did not tell her treatment providers about it. *Id* ., 191 Wis. 2d at 223.

¶ 43. The State points out, however, that *Speese I* is unhelpful because it was decided before *Green*, which changed the standard from "may be necessary" to a "reasonable likelihood" that the records are necessary. *See Green*, 253 Wis. 2d 356, ¶ 32.

¶ 44. Additionally, Giacomantonio cannot demonstrate prejudice because even without the medical records, the jury was aware that the victim in this case did not disclose Giacomantonio's abuse or exploitive behavior to her therapist. *See Speese II*, 199 Wis. 2d at 606 (reversing on harmless error grounds and concluding that evidence that the victim did not tell her therapist of abuse would have been redundant to evidence from police that she did not initially report abuse and from the victim herself acknowledging that she delayed reporting the abuse). For example, the victim testified that she did not tell anyone about Giacomantonio's abuse until after the first interview with police in September 2013, that she did not disclose Giacomantonio's abuse to her therapist, and that she did not talk to police during her first interview because it would have forced her to confront and think about everything that had happened. In all, the jury heard plenty of evidence that the victim did not disclose Giacomantonio's abuse to her therapist. Any-

thing in her therapy records confirming that fact would have been redundant and cumulative. Thus, any possible error would be harmless.

¶ 45.   Giacomantonio also relies on an unpublished case, *State v. Johnson*, No. 2011AP2864, unpublished slip op. (WI App. Apr. 18, 2012), *aff'd by* 2013 WI 59, 348 Wis. 2d 450, 832 N.W.2d 609, *aff'd and clarified on reconsideration,* 2014 WI 16, 353 Wis. 2d 119, 846 N.W.2d 1. As the State points out, *Johnson* is an unpublished case, and we need not address it. *See* WIS. STAT. § 809.23(3)(b). The State also notes that the purpose of the victim's counseling in *Johnson* was to discuss "interpersonal" relationships between the victim and family members, which included the defendant. Here, Giacomantonio adopts the "interpersonal relationships" language to align his case with *Johnson*; however, the actual purpose of the victim's counseling in this case was to address her attempted suicide. The trial court noted that every sexual assault case involving family members "involves interpersonal relationships." That does not automatically transform every sexual assault case involving family members into one that allows open season on victims' medical records.

¶ 46.   Finally, Giacomantonio argues that without the *in camera* review of the victim's treatment records, he was unable to meaningfully challenge the State's presentation of evidence. However, as the trial court noted in its denial of his request for an *in camera* review, Giacomantonio was "personally aware of many of the facts and the allegations that are set forth in the defense motion," and thus any evidence in the victim's mental health records would be cumulative. Accordingly, he was perfectly capable of challenging the State's presentation of evidence in a meaningful way.

¶ 47.  In sum, Giacomantonio falls far short of the threshold requirements set forth in *Shiffra* and *Green*. At the outset, he fails to set forth "a specific factual basis" that demonstrates that the victim's mental health records will contain "relevant information necessary to a determination of guilt or innocence." *See Green*, 253 Wis. 2d 356, ¶ 34. Instead, he merely speculates that the victim's treatment records "would have weakened the State's inducement argument." He offers no "fact-specific evidentiary showing" of relevance. *See id.*, ¶ 33.

¶ 48.  Because we find that a proper foundation was laid for authenticating the photographs of the text messages and that the trial court did not err in refusing to conduct an *in camera* review of the victim's mental health records, we affirm the trial court.

*By the Court.*—Judgment affirmed.