PER CURIAM.
¶1 Mario A. Harris appeals the judgments of conviction, following a jury trial, of one count of trafficking a child, one count of soliciting a child for prostitution, two counts of pandering, two counts of solicitation of prostitutes, one count of solicitation of prostitutes as a party to a crime, and two counts of conspiracy to commit pandering.[1] He also appeals from the postconviction order denying his motion for relief. We affirm.
BACKGROUND
¶2 This case has a long, complicated factual history.
¶3 On September 7, 2010, the State charged Harris in case No. 2010CF4362 with one count of human trafficking, as a party to a crime, two counts of soliciting prostitutes, as a party to a crime, two counts of soliciting prostitutes, and two counts of conspiracy to commit pandering, as a party to a crime. On February 28, 2011, Harris filed a speedy trial demand. Shortly thereafter, however, Harris's counsel filed a motion to withdraw as counsel. The trial court granted the motion, but confirmed that Harris understood that granting the motion "tolls the time limits on your speedy trial demand" until the next court date.
¶4 At the next hearing, on March 24, 2011, Harris's new counsel, Scott Anderson, made a speedy trial demand. Trial was scheduled for June 27, 2011. Four days prior to trial, however, the State filed a motion to adjourn the jury trial, telling the trial court that it would be filing an additional six or seven charges against Harris because it identified another victim. The State also told the court that the investigation into Harris's alleged activities was ongoing and it was still conducting witness interviews. Anderson objected to the adjournment, but told the court "practically speaking, and Mr. Harris knows my position, there's a ton of discovery that is not available to him yet that I need available to me including everything that's involved with this new disclosure today." The trial court adjourned the trial date.
¶5 On June 27, 2011, the State filed additional charges against Harris in case No. 2011CF2966. The complaint charged Harris with trafficking of a child, soliciting a child for prostitution, two counts of pandering, one count of exposing genitals or pubic area, human trafficking, mayhem, and soliciting prostitutes. On July 6, 2011, at Harris's arraignment, Anderson made a speedy trial demand. Due to court congestion and conflicts with the attorneys' schedules, a trial could not be scheduled within ninety days. The parties agreed to trial on October 10, 2011, for both case No. 2010CF4362 and case No. 2011CF2966.
The First Trial
¶6 On the day of trial, however, Anderson told the trial court that he was not prepared to proceed with trial for numerous reasons, including information he had only received shortly before trial, Harris's "prolific paper fil[ing]," and Harris's desire to proceed pro se and waive his speedy trial demand. The court then engaged in a lengthy colloquy with Harris, which included the following exchange:
THE COURT: ... Are you telling me right now, are you asking today, that you want to represent yourself, that's my question.
[Harris]: If you don't give my attorney time to represent me properly, then I'm representing me.
THE COURT: You are asking to waive the speedy, so your attorney will have more time to prepare your case. Not asking for him to get off the case?
[Harris]: Give him more time.
THE COURT: And you understand if you waive your right to a speedy trial, that I can't tell you--we'll put it in as soon as we can. I can't tell you when that will be.
[Harris]: Not worried about that. I'm worried about properly being represented.
THE COURT: You have a right to a speedy trial in 90 days. You had that right last time.
[Harris]: Can we cut through this--
THE COURT: If you waive your speedy trial, I have to take a waiver of that right. That's what I'm trying to do. So you had enough time to talk it over with Mr. Anderson, about waiving the right?
[Harris]: Yes.
THE COURT: And it's your desire to waive your rights?
[Harris]: Yes.
THE COURT: And did anyone pressure or promise you anything to get you to give up your right to a speedy trial?
[Harris]: No.
THE COURT: Doing it of your own free will?
[Harris]: Yeah.
THE COURT: Had enough time to make up your mind?
[Harris]: Yes.
THE COURT: Mr. Anderson, you are satisfied that Mr. Harris understands his right to a speedy trial and [is] waiving it freely, voluntarily, and intelligently?
[Anderson]: Yes. I never asked him to waive it.
THE COURT: He indicated he wanted to do so.
[Anderson]: Yes.
THE COURT: All right. I am satisfied Mr. Harris is waiving his right to a speedy trial freely, voluntarily, and intelligently, and knowingly.... I will grant the adjournment. I don't see how I can't....
¶7 The two cases finally proceeded to trial on December 5, 2011. On December 8, 2011, Anderson moved to withdraw as counsel telling the court:
I am asking for permissive withdrawal as his counsel. I am mindful of my obligation of confidentiality between Mr. Harris and myself, but there has been things said at counsel table that materially impairs my ability to continue to represent Mr. Harris, because I reasonably believe a credible threat of physical violence has been made to me or my family. It has to be a reasonable belief. And it is a more than reasonable belief. It's a considered belief that materially impairs my ability to represent him. It creates an absolute conflict of interest. And beyond that, it materially impairs my ability to communicate to effectively represent him.
What was said at counsel table I took as an immediate threat, not a courtroom threat. And I didn't ask for this, he is in the chair apparently with a stun belt. Not a courtroom threat, but something much more sinister and dangerous[.]
¶8 The trial court granted the motion to withdraw and declared a mistrial, citing Harris's conduct throughout the trial. The court noted that: Harris blamed Anderson for not receiving documents, but was caught stuffing legal documents down a toilet; a fight broke out in the gallery between members of Harris's family; Harris's family threatened a witness; and Harris put his attorney in a position where the court had no choice but to allow his attorney to withdraw. The court found Harris's conduct to be an attempt to "sabotage the trial, to manipulate the court to delay." Ultimately, the court stated: "I am letting Mr. Anderson withdraw. I am gonna declare a mistrial. I will talk to the jury. It's a mistrial forced by the defendant, so there is no prejudice in terms of starting the case over again." Harris made a new speedy trial demand.
The Second Trial
¶9 A new trial was scheduled for February 13, 2012, with Attorney Russell Jones as Harris's appointed counsel. Prior to trial, Jones filed a motion to exclude what he characterized as other acts evidence. Specifically, evidence relating to firearms and body armor seized from Harris's premises pursuant to a search warrant. Jones argued that the evidence was irrelevant, prejudicial, and could potentially create a "trial within a trial" as to whether the seized items belonged to Harris.
¶10 The State's offer of proof included an explanation of Harris's ongoing conduct, the use of one of the seized firearms to threaten one of the victims, and one victim's description of Harris wearing body armor while shooting at her. The trial court denied Jones's motion, finding, based upon the offer of proof, that the evidence was relevant to the allegations against Harris. The court stated that the evidence was not necessarily "other acts," but that even if the evidence qualified as "other acts," it was still relevant "to show this whole course of conduct that is being alleged."
¶11 The matter proceeded to trial where multiple witnesses testified, including four prostitutes whom Harris pandered. As relevant to this appeal, S.H.S. testified in graphic detail about physical and sexual abuse Harris inflicted on her. She told the jury that Harris kept three guns and that he used one of the guns to strike her in the back of her head. She also told the jury that she was aware Harris had a bulletproof vest and ammunition. Another prostitute who worked for Harris, C.A.S., told the jury that she observed Harris carry a gun and that Harris told her he "had guns."
¶12 Before providing the jury with written instructions, the trial court orally gave the jury instructions which were, as the trial court quickly acknowledged, erroneous with respect to counts three and seven in case No. 2011CF2966 (two counts of pandering). The issue was that pandering involves bringing a person to a prostitute (or vice versa) for sex. In the case of the oral instructions, however, one interpretation of the court's instruction would involve someone bringing two of the prostitutes-S.H.S. and T.S.Y.-to themselves, rather than bringing a person to them. To repair this, the court indicated it would fix the mistake in the written instructions that it would provide to the jury. Both parties agreed, and the change was made. It is undisputed that the jury had the correct written instructions while it deliberated.
¶13 The jury found Harris guilty of most, but not all, of the charges. In case No. 2011CF2966, the jury found Harris guilty of: trafficking of a child, soliciting a child for prostitution, two counts of pandering, and soliciting to practice prostitution. In case No. 2010CF4362, the jury found Harris guilty of soliciting to practice prostitution as a party to a crime, two counts of conspiracy to commit pandering, and one count of soliciting to practice prostitution. Harris received an extensive sentence.[2]
Postconviction Motion
¶14 Harris filed a postconviction motion for relief, arguing: (1) Anderson provided ineffective assistance of counsel for failing to enforce Harris's right to a speedy trial; and (2) Jones provided ineffective assistance of counsel for failing to object to "clearly confusing and erroneous jury instructions." (Capitalization and underlining omitted.) The postconviction court denied the motion without a hearing. This appeal follows.
DISCUSSION
¶15 On appeal, Harris again argues that both Anderson and Jones provided ineffective assistance of counsel. He also argues that the trial court erred in admitting evidence of firearms and body armor recovered from his premises pursuant to a search warrant.
Ineffective Assistance of Counsel
¶16 To prevail on a claim of ineffective assistance of trial counsel, a defendant must show that counsel was deficient and the deficiency prejudiced his defense. See State v. Mayo , 2007 WI 78, ¶ 33, 301 Wis. 2d 642, 734 N.W.2d 115. A defendant must successfully show both deficiency and prejudice, so if one prong is unfulfilled, we need not address the other. See State v. Manuel , 2005 WI 75, ¶ 72, 281 Wis. 2d 554, 697 N.W.2d 811.
¶17 To prove deficiency, a defendant must demonstrate that counsel's conduct falls below an objective standard of reasonableness. Strickland v. Washington , 466 U.S. 668, 687 (1984). To prove prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.
¶18 Ineffective assistance claims present us with mixed questions of fact and law. See Mayo , 301 Wis. 2d 642, ¶ 32. The trial court's findings of historical fact will be upheld unless clearly erroneous; whether those facts constitute a deficiency or amount to prejudice are determinations we review de novo . See id.
A. Anderson was not ineffective for failing to preserve Harris's right to a speedy trial
¶19 A defendant is guaranteed the right to a speedy trial by the United States Constitution. Barker v. Wingo , 407 U.S. 514, 515 (1972). To determine whether a defendant's right to a speedy trial has been violated, courts must use a balancing test "in which the conduct of both the prosecution and the defendant are weighed." Id. at 530. Courts should consider four primary factors: (1) whether the defendant asserted the right of a speedy trial; (2) the length of the delay; (3) the reason for the delay; and (4) the prejudice to the defendant. Id. However, "none of the four factors ... [is] either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial." Id. at 533. "Rather, they are related factors and must be considered together with such other circumstances as may be relevant." Id.
¶20 Harris was charged in case No. 2010CF4362 in September 2010. Harris's first speedy trial demand was made on February 28, 2011. The matter proceeded to trial on a consolidated information on December 5, 2011, but resulted in a mistrial. The second trial began on February 13, 2012.
¶21 When the length of the delay approaches a year, it is presumptively prejudicial, triggering a closer examination of the circumstances surrounding the claim. State v. Urdahl , 2005 WI App 191, ¶ 12, 286 Wis. 2d 476, 704 N.W.2d 324. While the delay here was significant, the delay is not by itself determinative of a violation. Wisconsin courts and the United States Supreme Court have held that there was no speedy trial violation in cases involving similar or lengthier delays. See State v. Lemay , 155 Wis. 2d 202, 204, 455 N.W.2d 233 (1990) (no speedy trial violation for a thirty-seven month delay); Urdahl , 286 Wis. 2d 476, ¶¶ 25, 32 (no speedy trial violation for a thirty-month delay, twenty and one-half months of which was attributable to the State); Barker , 407 U.S. at 535-36 (no speedy trial violation for a five-year delay).
¶22 Turning to the reasons for the delay, the State first sought an adjournment because it planned to bring additional charges against Harris. The State told the trial court that it located an additional victim and was conducting witness interviews. Anderson conceded that an adjournment was in Harris's best interest because Anderson needed more time to prepare for trial. When trial was set to commence in October 2011, Anderson again told the court that he needed more time. Harris himself asked the court to adjourn the case, telling the court that his attorney needed more time to prepare and he was willing to waive his speedy trial demand. When the trial finally did take place, Harris's own conduct led to a mistrial. A second trial took place in February 2012, more than one year after charges were issued. It is clear from the record that Harris was responsible for a majority of the trial delays-Harris asked the court for additional time, expressly stating that he was willing to waive his speedy trial right, and Harris's conduct led to the first mistrial. Harris cannot now argue that Anderson failed to protect his right to a speedy trial.
¶23 As for prejudice to Harris from the delay, it "should be assessed in the light of the interests ... which the speedy trial right was designed to protect." See Barker , 407 U.S. at 532. The right to a speedy trial was designed: (1) to prevent oppressive pretrial incarceration; (2) to minimize the anxiety and concern of the accused; and (3) to limit the possibility the defense will be impaired. Id. As the United States Supreme Court explained in Barker , the most serious concern is prejudice to the defendant's ability to present a defense "because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." Id. at 532.
¶24 Here, we can discern no prejudice from the delay. Although Harris was in custody while awaiting trial because he was unable to post a cash bond in either case, the record supports the conclusion that Harris caused much of the delay himself. See State v. Leighton , 2000 WI App 156, ¶ 17, 237 Wis. 2d 709, 616 N.W.2d 126 (stating that where the defendant's conduct suggests that he or she did not want a speedy trial, we are reluctant to rule that the defendant's speedy trial right was violated). There is no evidence in the record that Harris suffered from anxiety or concern because of the delay; indeed, in the first trial, the trial court found that Harris was intentionally trying to delay the case. There is also no evidence in the record that the defense was impaired because of the delay. In fact, much of the delay stemmed from Anderson's articulated need for additional preparation time-time for which Harris himself advocated.
¶25 Under the totality of the circumstances we conclude that Harris's right to a speedy trial was not violated; thus, we cannot conclude that Anderson was ineffective for failing to preserve Harris's right. See State v. Toliver , 187 Wis. 2d 346, 360, 523 N.W.2d 113 (Ct. App. 1994) (counsel is not ineffective for failing to make meritless arguments).
B. Jones was not ineffective for failing to object to the trial court's jury instructions
¶26 Harris was charged with two counts of pandering in violation of WIS. STAT. § 944.33. The elements of pandering are:
1. The defendant [directed or transported a person to a prostitute] [or] [directed or transported a prostitute to a person].
A prostitute is a person who intentionally engages in sexual intercourse or other sexual acts for anything of value.
2. The defendant [directed or transported a person to a prostitute] [or] [directed or transported a prostitute to a person] with intent to facilitate the person in [having nonmarital intercourse] [or] [committing an act of (sexual gratification involving the sex organ of one person and the mouth or anus of another) (or) (masturbation) (or) (sexual contact) ] with a prostitute.
"With intent to facilitate" requires that the defendant acted with the mental purpose to assist the person in (use the term selected for element 2.).
WIS JI- CRIMINAL 1568.
¶27 The trial court specifically told the jury that "you will have a copy [of the jury instructions] in the jury room." The court then orally instructed the jury with respect to count three:
Count three of the information charges that between January 1, 2009 and January 17, 2009, at locations on West Greenfield Avenue ... in the City of Milwaukee, in Milwaukee County, Wisconsin, the defendant Mario Harris, with intent to facilitate another, [T.S.Y.], in having non-marital sexual intercourse or to commit acts of sexual gratification in public or in private ... or sexual contact with a prostitute did direct or transport a person to a prostitute or a prostitute to a person receiving compensation from the earnings of said prostitute....
The court orally instructed the jury with respect to count seven:
Count 7 of the information charges that between January 1, 2009 and January 17, 2009, at or near South 10th or 11th Street, and West Hayes Avenue, at a residence in the City of Milwaukee, in Milwaukee County, Wisconsin, the defendant, Mario Harris, with intent to facilitate another, [S.H.S.] in having non-marital sexual intercourse or to commit acts of sexual gratification in public or in private ... or sexual contact with a prostitute did direct or transport a person to a prostitute or a prostitute to a person, receiving compensation from the earnings of said prostitute.
¶28 Outside of the presence of the jury, the trial court told the parties that the instructions may have sounded "goofy." The issue was that pandering involves bringing a person to a prostitute (or vice versa) for sex. In the case of the oral instructions, however, since T.S.Y. and S.H.S. were the prostitutes, one interpretation of the instruction would involve someone bringing T.S.Y. and S.H.S. to themselves, rather than bringing a person to them.
¶29 The parties agreed that any error in the oral instructions could be rectified by the written instructions, which stated:
Count three of the information charges that between January 1, 2009 and January 17, 2009 at locations on W. Greenfield Avenue and/or at a residence at or near S. 10 or 11th Streets and W. Hayes Ave., and/or other locations, in the City of Milwaukee, Milwaukee County, Wisconsin, involving [TSY], the defendant, Mario Harris, with intent to facilitate another, in having non-marital sexual intercourse....
Count seven of the information charges that between January 1, 2009 and January 17, 2009 at or near S. 10th or S. 11th Streets and W. Hayes Ave., at a residence, in the City of Milwaukee, Milwaukee County, Wisconsin, involving [SHS], the defendant, Mario Harris, with intent to facilitate another, in having non-marital sexual intercourse....
Harris now contends that counsel should have objected to the "goofy" oral instructions.
¶30 The jury was provided with a copy of the correct written instructions. Harris was charged with numerous crimes. The jury instructions totaled thirty-two pages. To assert that the jury was confused by the discrepancy between the trial court's oral statement and the written instructions is purely speculative. Moreover, the trial court's oral error was corrected with the written instructions. We assume that juries follow jury instructions, see State v. Truax , 151 Wis. 2d 354, 362, 444 N.W.2d 432 (Ct. App. 1989).
¶31 Because Harris does not demonstrate that the jury was indeed confused and therefore that he was prejudiced by Jones's failure to object, we cannot conclude that Jones rendered ineffective assistance.
C. The trial court did not err in admitting evidence of firearms and body armor.
¶32 Finally, Harris argues that the trial court erred in admitting evidence of firearms and body armor found in his home pursuant to a search warrant. Specifically, he argues that the admission of evidence "improperly aroused the jury's sense of contempt, promoted a desire to punish, and appealed to the jury's sympathies." Harris provides no evidence to support that argument.
¶33 "The trial court has 'broad discretion to admit or exclude evidence,' and this court may overturn its decision only if the trial court erroneously exercised its discretion." See State v. Giacomantonio , 2016 WI App 62, ¶ 17, 371 Wis. 2d 452, 885 N.W.2d 394 (citation omitted). Accordingly, we will uphold a trial court's decision to admit evidence if it "correctly applied accepted legal standards to the facts of record and, using a rational process, reached a conclusion that a reasonable judge could reach." See State v. Jensen , 2011 WI App 3, ¶ 75, 331 Wis. 2d 440, 794 N.W.2d 482.
¶34 Here, the trial court admitted the evidence of firearms and body armor, finding "[i]t's part of this conduct. This is a period of conduct alleged over a period of time. That includes allegations of threats." The evidence is relevant to the context in which some of the crimes occurred-S.H.S., one of the women pandered by Harris, testified about ongoing abuse she suffered at Harris's hands. Such abuse included Harris's use of a firearm. S.H.S. also testified that Harris owned body armor. C.A.S. testified that she was aware of abuse other women who worked for Harris sustained and that she was aware Harris carried guns. Consequently, the physical evidence found during the search was relevant to the State's argument that Harris continuously acted in a threatening manner towards the women he pandered.
¶35 Moreover, Harris's claim that the physical evidence unfairly aroused the jury's anger is purely speculative. The jury heard testimony from multiple witnesses that Harris engaged in violence and threatening behavior toward the women he pandered. The corroborated parts of the testimony of the women and the physical evidence tended to show the context under which the crimes were committed.[3] We conclude that the trial court did not err in admitting evidence of the firearms and body armor.
¶36 For the foregoing reasons, we affirm.
By the Court. -Judgments and order affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

The charging documents charged Harris with "pandering/pimping" contrary to Wis. Stat. § 944.33(2) (2015-16). Section 944.33 is the pandering statute. Accordingly, we only refer to these charges as "pandering." All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

The State explained Harris's sentence in its brief as follows:
Case No. 2011CF2966
Count One: Trafficking of a Child. Six years of initial confinement, 5 years of extended supervision, concurrent with counts 2 and 3, but consecutive to any other sentence.
Count Two: Soliciting a Child for Prostitution. Six years of initial confinement, 5 years of extended supervision, concurrent with counts 1 and 3, but consecutive to any other sentence.
Count Three: Pandering[ ]. Six years of initial confinement, 5 years of extended supervision, concurrent with counts 1 and 2, but consecutive to any other sentence.
Count Six: Solicitation of Prostitutes. Two years of initial confinement, 2 years of extended supervision, concurrent with count 7, but consecutive to any other sentence.
Count Seven: Pandering[ ]. Five years of initial confinement, 5 years of extended supervision, concurrent with count 6, but consecutive to any other sentence.
Case No. 2010CF4362
Count Eight: Solicitation of Prostitutes (PTAC). Three years of initial confinement, 3 years of extended supervision, concurrent with count 9, but consecutive to any other sentence.
Count Nine: Conspiracy to Commit Pandering[ ]. Three years of initial confinement, 3 years of extended supervision, concurrent with count 8, but consecutive to any other sentence.
Count Ten: Solicitation of Prostitutes. Three years of initial confinement, 3 years of extended supervision, concurrent with count 11, but consecutive to any other sentence.
Count Eleven: Conspiracy to Commit Pandering[ ]. Three years of initial confinement, 3 years of extended supervision, concurrent with count 10, but consecutive to any other sentence.
(Italics omitted.)

Because we conclude that the evidence was properly admitted for context, we need not discuss whether the evidence constitutes other acts evidence.