**COURT OF APPEALS
DECISION
DATED AND FILED**

**May 11, 2023**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP1852**

STATE OF WISCONSIN

Cir. Ct. No. **2022ME114**

IN COURT OF APPEALS
DISTRICT IV

IN THE MATTER OF THE CONDITION OF **D.F.B.**:

**DANE COUNTY,**

PETITIONER-RESPONDENT,

V.

**D.F.B.,**

RESPONDENT-APPELLANT.

APPEAL from orders of the circuit court for Dane County: RHONDA L. LANFORD, Judge. *Reversed.*

¶1 BLANCHARD, P.J.[1] D.F.B. challenges the circuit court's orders placing him under an involuntary mental health commitment and for involuntary

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(d) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

medication or treatment. The commitment order was based on jury findings that D.F.B. was mentally ill, a proper subject for treatment, and a danger to himself or others as defined by the "second standard of dangerousness" under WIS. STAT. § 51.20(1)(a)2.b. I conclude that one of D.F.B.'s arguments on appeal is valid and dispositive: the circuit court erroneously overruled D.F.B.'s objection to the County eliciting oral testimony that was the County's exclusive method of proving the contents of writings, in violation of Wisconsin's best evidence rule, WIS. STAT. § 910.02. The writings that were not offered as evidence were three emails written and sent by D.F.B. that allegedly contained threats. The County relied on the testimony regarding the contents of the emails as its weightiest evidence that D.F.B. met the second standard of dangerousness.

¶2 On this issue, the County's sole attempt at a substantive argument is to contend that the County offered the testimony purporting to establish the contents of the emails only to prove that D.F.B. adopted the contents during an interview with police, and not to prove that he made the threats. But it is clear from the record that the County relied on the testimony to prove that D.F.B. made the alleged threats and the County fails to show how it can avoid application of the best-evidence rule (as opposed to a rule of hearsay) simply because there was testimony that D.F.B. adopted the contents in a police interview. The County also makes a harmless error argument, which I reject based on a lack of development.

¶3 D.F.B. argues that, despite the expiration of his initial commitment and medication orders, this appeal is not moot. He further contends that the appropriate remedy under the circumstances is to vacate the orders, rather than to direct that a new trial be held. The County is silent on each of these topics, and thus concedes them. Accordingly, the orders of the circuit court are reversed.

## BACKGROUND

¶4       In March 2022, D.F.B. was placed under emergency detention. *See* WIS. STAT. § 51.15.  At a probable cause hearing the circuit court found probable cause for a commitment.[2] *See* WIS. STAT. § 51.20(7).  D.F.B. demanded a jury trial. *See* § 51.20(11)(a).

¶5       D.F.B. filed a pretrial motion in limine seeking an order prohibiting expert witnesses from offering hearsay testimony and also seeking an instruction that the jury should disregard hearsay evidence offered in support of an expert opinion.  As argued to the circuit court, these motions primarily focused on the threatening contents of emails that D.F.B. had allegedly sent to an employee of the University of Wisconsin-Madison.   D.F.B. acknowledged in arguing for his motion that "experts need to be able to explain … how they came to their conclusion[s]."  But he argued that this need could be met without allowing the experts to provide "specific quotes" regarding the contents of the emails—specifics that he contended would reflect "multiple levels of hearsay" and that would be "extremely prejudicial" to D.F.B.  The circuit court ruled:

> [T]he test is whether [the emails'] probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect.  And they have significant probative value in helping the jury assess why does the expert believe … that this person is dangerous, but I also agree that it has a significant prejudicial effect just hearing those.  Even with … the standard limiting instruction or cautionary instruction, I think it would be very difficult for a jury to take those statements, set those aside and say, ["W]ell, those are hearsay.  I can consider them to evaluate the testimony, but

---

[2] The Honorable Juan B. Colás presided over pretrial proceedings and the Honorable Rhonda L. Lanford presided over trial.

> I can't consider them as if it's proven true that he said those things.["] So I agree that the direct quotations of the threat[ening emails] that are contained in the statement of emergency detention and quoted by the examiners … should be excluded under [Wis. Stat. §] 907.03, but that they can be stated in a summary fashion which reduces their inflammatory effect by avoiding the direct quotations. But I think it's important enough for the jury to know that the expert didn't just pull this out of a hat. [The expert] had some basis for reaching their conclusion.

¶6     D.F.B. also moved to exclude evidence regarding his criminal history and previous convictions. The County did not object to this motion.

¶7     At trial, the County called four witnesses. A University of Wisconsin police officer testified regarding contact she had with D.F.B. after the officer received a report that D.F.B. had sent threatening emails to a university employee. The officer testified that she discussed the emails with D.F.B, including going over the contents of the emails with him. The officer testified that this included D.F.B. acknowledging having written and sent an email stating that the recipient was "a little bitch who needs their throat slashed." Based in part on concerns raised by the emails, university police took safety measures to protect the employee, including "lock[ing the employee's office] suite," adding a police patrol in the area of the employee's house, and discussing safety concerns with the employee's family.

¶8     A mental health crisis worker testified regarding her contact with D.F.B. following his detention at the Dane County Jail. The crisis worker testified that she also discussed with D.F.B. emails that he allegedly sent to the university employee. This included testimony that one email referred to "slicing the throat of the" employee.

¶9      At no point did the County introduce as evidence a written copy of any of the three emails allegedly written and sent by D.F.B.

¶10     Psychiatrist Tal Herbsman testified that he could state to a reasonable degree of medical certainty that D.F.B. was mentally ill and a proper subject of treatment. Dr. Herbsman's testimony also included the following. Herbsman treated D.F.B. on an inpatient basis during his emergency detention. In doing so, Herbsman met with D.F.B. multiple times and reviewed "collateral sources" of information regarding D.F.B. In summarizing this information, Herbsman referenced records reflecting information regarding previous occasions on which D.F.B. had been hospitalized. Herbsman also referenced a request by D.F.B.'s initially appointed counsel to withdraw from representing him, based on counsel's "concerns about her safety." As part of Herbsman's "violence risk assessment," he weighed the fact that D.F.B. had "historically been jailed for violent acts." Herbsman further testified regarding "one unusual incident" that Herbsman did not personally witness, in which D.F.B. asked a nurse, "'What would happen if [D.F.B.] called 911 and the police came?'" and then D.F.B. said that "'[t]he police would come with a gun'" and "that having a gun right now would be helpful."

¶11     The County also called psychiatrist Leslie Taylor, who was appointed as an independent examiner to evaluate D.F.B. following his emergency detention. *See* WIS. STAT. § 51.20(9). Dr. Taylor testified in part to the following. She diagnosed D.F.B. as having schizophrenia. D.F.B. "mentioned that he was diagnosed with [schizophrenia] when he was in prison in Illinois" and again "when he was at UW in September of 2021." Taylor opined that D.F.B.'s mental illness was treatable. Taylor further opined that D.F.B. was a danger to others

5

because he could act on his delusion that it would be legal for him to kill someone and he had a general lack of insight into his mental illness.

¶12     D.F.B. called one witness, clinical psychologist David Lee, who was the other independent examiner appointed to evaluate D.F.B.  Dr. Lee also diagnosed D.F.B. as having treatable schizophrenia.  But Lee disagreed with the other experts on the potential dangerousness issue.  Lee testified that, while D.F.B. "has made several verbal threats that may be uncomfortable and threatening to other people," "there has not been a demonstration of physical harm to himself or others."  Lee testified that, when D.F.B. wrote and sent "emails containing threats" to the university employee, Lee considered D.F.B. to have been under the impression that the emails would be "intercept[ed]" by "artificial intelligence" before reaching the employee.

¶13     D.F.B. did not testify.

¶14     The jury found that D.F.B. was:  mentally ill; a proper subject for treatment; and a danger to himself or others under the "second standard of dangerousness" under WIS. STAT. § 51.20(1)(a)2.b.  *See **Sauk Cnty. v. S.A.M.**,* 2022 WI 46, ¶4, 402 Wis. 2d 379, 975 N.W.2d 162 (the "Second Standard" of current dangerousness requires in pertinent part showing a "substantial probability of physical harm to others evidenced by … a recent overt act, attempt or threat to do serious physical harm that placed others in reasonable fear of serious physical

harm").[3] Based on this verdict, the circuit court entered an order for involuntary commitment of D.F.B.

¶15 Based on other testimony provided by Dr. Herbsman and Dr. Taylor to the circuit court, the court further ordered that D.F.B. be subject to involuntary medication and treatment. I need not summarize this testimony because D.F.B.'s sole basis for challenging the medication order depends on his challenge to the commitment order. *See* WIS. STAT. § 51.61(1)(g). D.F.B. appeals.

## DISCUSSION

¶16 D.F.B. argues that the circuit court erred by rejecting his objection, based on the best-evidence rule, to the detailed testimony about what the witnesses recalled of the contents of the emails. Under the general rule in WIS. STAT. § 910.02, an "original writing" is required to prove the contents of the writing. *See also* WIS. STAT. § 910.01(1), (3) (defining "original" "writings and recordings" to include printouts of electronically recorded "letters, words or numbers"); *see also **State v. Giacomantonio***, 2016 WI App 62, ¶29, 371 Wis. 2d

---

[3] The jury further determined that the County had not met its burden to establish that D.F.B. was dangerous under the "third standard," WIS. STAT. § 51.20(1)(a)2.c. (individual dangerous due to "impaired judgment, manifested by evidence of a pattern of recent acts or omissions, that there is a substantial probability of physical impairment or injury to himself or herself or other individuals"). Neither party argues that this finding matters to any issue raised on appeal and I address it no further.

452, 885 N.W.2d 394 (referring to § 910.02 as "Wisconsin's best evidence rule").[4] Rather than argue that an exception to this rule applies, the County argues that the officer's testimony was not offered to prove the contents of the emails, but instead to provide the officer's "recollection of the statements that D.F.B. specifically admitted to." In reply, D.F.B. argues that this is "a distinction without a difference," given that the County elicited the testimony for the clear purpose of attempting to meet its burden to establish that D.F.B. had recently made threats, which was the County's trial theory as to how D.F.B. met the dangerousness standard under WIS. STAT. § 51.20(1)(a)2.b. The County purports to make an alternative argument based on harmless error. After providing the pertinent standard of review and relevant substantive standards, I provide additional background before explaining why I conclude that the circuit court erred in overruling D.F.B.'s objection and reject the County's arguments.

¶17 The rules of evidence for civil actions apply to involuntary commitment trials. *See* WIS. STAT. § 51.20(10)(c); WIS. STAT. § 911.01(2). "'We review a circuit court's decision to admit or exclude evidence under an erroneous

---

[4] A word may be needed regarding the terms "original" and "duplicate," given the rule that ordinarily the best-evidence rule requires the production of an "original" writing when a document is central to a case, but that under certain conditions a party may offer a "duplicate." Under WIS. STAT. § 910.03, a "duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original." *See also* WIS. STAT. § 910.01(4) ("A 'duplicate' is a counterpart produced by the same impression as the original, or from the same matrix, or by means of photography, including enlargements and miniatures, or by mechanical or electronic rerecording, … or by other equivalent technique which accurately reproduces the original."). As noted, here there is no dispute that the County did not introduce any exhibit purporting to be a copy of any of the emails that were the subjects of testimony, either as an "original" or as a "duplicate." With that background and putting entirely to the side the issue of what would count as an "original" or a "duplicate" of an email, for ease of reference this opinion speaks in terms of the failure to introduce an "original" of any of the emails, without separately referring to the concept of "duplicates," even if in many cases parties offer duplicates that satisfy the rule.

exercise of discretion standard.'" *See **State v. Nieves**,* 2017 WI 69, ¶16, 376 Wis. 2d 300, 897 N.W.2d 363 (quoting ***Martindale v. Ripp***, 2001 WI 113, ¶28, 246 Wis. 2d 67, 629 N.W.2d 698).

¶18    Significant here, since D.F.B.'s argument is that the circuit court failed to properly apply the best-evidence rule and not that the court erroneously exercised its discretion in some other way, "[a] misapplication or an erroneous view of the law is an erroneous exercise of discretion." *See **Johnson Bank v. Brandon Apparel Grp., Inc.**,* 2001 WI App 159, ¶9, 246 Wis. 2d 828, 632 N.W.2d 107.

¶19    In order to obtain a commitment under WIS. STAT. ch. 51, the County must prove that the individual is mentally ill, a proper subject for treatment, and dangerous. *See **Marathon Cnty. v. D.K.**,* 2020 WI 8, ¶30, 390 Wis. 2d 50, 937 N.W.2d 901; WIS. STAT. § 51.20(1)(a).  The County here was required to prove "all required facts by clear and convincing evidence." *See* § 51.20(13)(e).

### I. Additional Background

¶20    As noted above, the police officer testified at trial regarding her questioning of D.F.B. about three emails that he allegedly sent to the university employee.  Without directing the officer to an exhibit of any kind, counsel for the County asked the officer whether she had read the emails and if their contents caused her "concern[]." The officer responded that she had read the emails and that they were "[e]xtremely concerning."  The County asked the officer to describe "some of the concerning statements."  The officer began to testify about the content, stating that the subject line for one of them was:  "you are a little bitch who needs their throat slashed."

9

¶21 Counsel for D.F.B. initially objected on the grounds that the officer's testimony was hearsay and "highly prejudicial." In ruling on these initial objections, the circuit court acknowledged that the contents of the emails "might be highly prejudicial," but overruled the hearsay objection, reasoning that the emails were not being offered to prove the matters asserted in the emails. More specifically, the court reasoned that the contents of the emails were not being offered for the truth that the university employee was "a little bitch who needs his throat slashed." D.F.B.'s counsel then further objected that the officer's testimony was not the "best evidence" of the contents of the emails. Counsel also said that he had not received "any notice" that the County would introduce the emails as exhibits.[5] The court overruled the best-evidence objection without explanation.[6]

¶22 The officer then described the emails as follows, purporting to recall their contents from memory:

> A: In that same email [with the subject line "you are a little bitch who needs their throat slashed"], it … continued on [to state] that "you are a little bitch who needs the shit kicked of him" or "shit beat out of him." He goes

_____

[5] In making this statement about "notice" of exhibits, counsel did not appear to have intended to allege any sort of discovery violation by the County. Instead, counsel appeared to be making the point that the County had not offered the emails as evidence to that point in the trial and that the County apparently had no plans to offer them. Further, D.F.B. raises no discovery issue in this appeal.

[6] D.F.B. on appeal asserts that the circuit court "refused to rule on [the] best evidence objection." I disagree. The trial transcript shows that, after D.F.B. briefly expanded on his basis for this objection, the court said, "The objection is overruled."

Separately, I note that the County does not argue that D.F.B.'s concise argument in the circuit court in support of his contemporaneous best-evidence objection was insufficient to preserve for appeal the issue. Nor does the County argue that D.F.B. was required to renew an analogous objection to the mental health crisis worker's more limited reference to contents of an email.

> on to say that he believes that the [employee] is involved with terrorist activity.
>
> And then he goes on to say, "Fuck you. Fuck the UW. Fuck people like you who believe that I shouldn't be on campus. People like me should be on campus so that we can come beat the shit out of you and people like you."
>
> ….
>
> The next email was, "Where do you live, asshole?" was the subject. And then in the email it said, "Where do you live, asshole? I'm thinking about finding you and lawfully killing you."
>
> And then the third email was something to the effect of ["]you must bow down to me.["]

The officer further testified that D.F.B. agreed to discuss the three emails with the officer. According to the officer, D.F.B. "acknowledged that he sent the emails from the downtown Madison library," "that the email address [from which he sent the emails] was [D.F.B.'s own] email address[,] and that the email address of the recipient was who he intended the email[s] to go to." D.F.B. "confirm[ed] that he wrote all [three] emails," after the officer "went through each one … with [him]."

¶23 To repeat, the mental health crisis worker testified that one email referred to "slicing the throat of the" employee. She further testified that she asked D.F.B. if he had made plans to carry out this threat, such as by acquiring or storing a knife, and that he responded in an unclear manner but that he made "a concerning motion that looked as if he was gesturing, like, a knife motion." The

11

trial transcript reflects that the crisis worker "[i]ndicat[ed]" what the motion looked like.[7]

## II. Requirement of Original to Establish Contents

¶24     I conclude that D.F.B. has shown that trial counsel made a valid objection based on WIS. STAT. § 910.02, and therefore the circuit court erroneously exercised its discretion in failing to hold the County to the requirements of that rule.  The officer, as well as the mental health crisis worker, testified to the contents of one or more of the emails, and no original emails were admitted.  The County treated this testimony as proof that D.F.B. had made the threats, arguing to the jury in closing argument that D.F.B. "admitted to sending very threatening emails," "emails in which he threatens to kill" the university employee.

¶25     The County's only argument is to assert that it did not offer this testimony in order to, in the words of WIS. STAT. § 910.02, "prove the full contents" of the emails.  More specifically, the County attempts to disavow an attempt to prove the contents of the emails by characterizing it as an attempt to prove only that D.F.B. told the officer that he had written and sent them.  I agree with D.F.B., however, that the only reasonable interpretation of the record is that the County elicited the testimony to support the County's position that D.F.B. made "threat[s] to do serious physical harm," and for no other purpose.  *See* WIS.

---

[7] Reports written by Drs. Taylor and Lee included purported quotations of the emails. The reports were admitted into evidence as trial exhibits, but not given to the jury.  As noted in the text, only the officer and mental health crisis worker testified to the contents of the emails, *i.e.*, no witness testified regarding portions of the reports purporting to quote from the emails. Neither party makes any argument to the effect that references to the contents of the emails in the reports have any bearing on any issue in this appeal.

STAT. § 51.20(1)(a)2., (13)(e). The County fails to explain why the officer needed to testify regarding the contents of the emails in order to establish that D.F.B. had written and sent them. For that matter, the County fails to explain what the relevance of his writing and sending the emails could have been to these proceedings if the jury was not shown or told what the emails stated. Put differently, the County does not explain how it is material to the application of § 910.02 that the officer, in addition to testifying regarding the contents, also testified that D.F.B. told the officer that he had written and sent them.[8]

¶26    Although the County fails to address any exception to WIS. STAT. § 910.02 contained in the evidence rules, I briefly note two exceptions for context. First, WIS. STAT. § 910.07 allows a party to prove the contents of testimonial or written admissions through testimony, but this rule is limited to the admission of "the testimony or deposition of the party against whom offered or by the party's written admission." Here there was no testimony, deposition, or written admission of D.F.B. Second, there is an exception to the rule that addresses proof of "collateral matters," but that could not apply here. *See* WIS. STAT. § 910.04(4) (allowing admission of writing contents without original for "collateral matters" when the writing is not "closely related to a controlling issue"). Here the contents

---

[8] At least so far as the County shows, whether D.F.B. adopted the contents of the emails is not pertinent to the best-evidence rule issue. Instead, it would be pertinent to whether the officer's testimony about the contents of the emails was exempted from constituting hearsay under WIS. STAT. § 908.01(4)(b)2., which establishes that a statement is not hearsay if "the party has manifested the party's adoption or belief in its truth." D.F.B. argues on appeal that the circuit court should not have admitted the testimony about the contents of the emails because it was hearsay evidence, but I do not reach that issue. In yet another argument on appeal, D.F.B. challenges the fact that the County elicited separate testimony regarding D.F.B.'s criminal record and prior hospitalizations, but I also do not reach that issue. As noted in the harmless error discussion below, I assume without deciding that the alleged hearsay and criminal record and hospitalization evidence was properly admitted.

of the emails relate to whether they constituted threats of serious physical harm, and thus the contents were "closely related to a controlling issue" in determining whether D.F.B. was dangerous under WIS. STAT. § 51.20(1)(a)2.b.

¶27    For these reasons, I conclude that the circuit court erred in overruling the objection, leaving the harmless error topic.

### III. Harmless Error

¶28    I begin with pertinent legal standards, which provide context for the ways in which the County's argument on harmless error is undeveloped.

¶29    Under "harmless error" analysis, this court determines whether an erroneous exercise in discretion to admit evidence requires reversal. *See Martindale*, 246 Wis. 2d 67, ¶30. An error is "harmless" and does not require reversal "unless a substantial right" of a party is affected. *See id.*, ¶31 (discussing WIS. STAT. §§ 805.18(2), 901.03). "For an error 'to affect the substantial rights' of a party, there must be a reasonable possibility that the error contributed to the outcome of the action or proceeding at issue. A reasonable possibility of a different outcome is a possibility sufficient to 'undermine confidence in the outcome.'" *Id.*, ¶32 (quoted source and citation omitted).

¶30    Determining if an error is harmless calls for the consideration of a "variety of factors," including but not limited to: "the frequency of the error, the nature of the [County]'s case, the nature of the defense, the importance of the erroneously included or excluded evidence to [either party]'s case, the presence or absence of evidence corroborating or contradicting the erroneously included or excluded evidence, whether erroneously admitted evidence merely duplicates untainted evidence, and the overall strength of the [County]'s case." *See State v.*

*Norman*, 2003 WI 72, ¶48, 262 Wis. 2d 506, 664 N.W.2d 97; *see also Hannemann v. Boyson*, 2005 WI 94, ¶57, 282 Wis. 2d 664, 698 N.W.2d 714 ("The test for harmless error in civil cases is the same as that in criminal cases.").

¶31 "The burden of proving no prejudice is on the beneficiary of the error," in this case the County. *See State v. Dyess*, 124 Wis. 2d 525, 543, 370 N.W.2d 222 (1985). Thus, applying these standards here, the County bears the burden of showing that the admission of testimony regarding the contents of the emails, without introducing originals, does not undermine confidence in its having met its burden to prove that D.F.B. was dangerous under the "second standard."[9]

¶32 In light of these standards, the County's harmless error argument is undeveloped in multiple respects and I reject it on that basis. As part of its argument, the County focuses on testimony given by multiple witnesses regarding D.F.B.'s history of being hospitalized and his contacts with the criminal justice system, along with testimony by Dr. Herbsman about D.F.B.'s statements while detained about police "with a gun" responding to a 911 call and "that having a gun right now would be helpful." Thus, it is not clear if the County's harmless error argument focuses on the pertinent error—the admission of the contents of the emails without also introducing originals. Further, the County asserts that there was "untainted evidence" that would preserve confidence in the outcome of trial, but fails to support that assertion with references to the record.

---

[9] D.F.B. does not dispute that, even absent the WIS. STAT. § 910.02 error or the other errors alleged by D.F.B. that I do not address, the County met its burden to show that D.F.B. was mentally ill and a proper subject for treatment.

¶33 Further, even if the County had developed its harmless error argument, I question whether it could meet its burden to establish harmless error based on the trial record. Applying the interrelated factors noted above, I begin with frequency. The admission of testimony regarding the contents of the emails (without the additional admission of the originals) occurred during the testimony of the officer and to a lesser extent that of the mental health crisis worker. While the references to the contents of the emails were not numerous, the next three factors point away from the error being harmless. The contents of the emails were a critical feature of the County's relatively brief case and they related to a central issue at trial—the County was attempting to prove that D.F.B. met the second standard of dangerousness through recent threats of serious bodily harm. Similarly, the contents of the emails were central to D.F.B.'s argument to the jury that the County had not met its burden on dangerousness.

¶34 Regarding the overall strength of the County's case, D.F.B. concedes that the following constituted admissible evidence relating to dangerousness: that the experts made topline observations to the effect that the emails contained threatening statements of some kind, as necessary to allow the experts to summarize the facts underlying their opinions, which the circuit court allowed in the pretrial ruling on the motions in limine; that D.F.B., when asked by a mental health crisis worker if he had obtained or planned to use a knife, made a "concerning … knife motion"; and that D.F.B. informed Dr. Taylor of his delusion that he would not be breaking the law if he were to kill someone. In addition to this evidence, I assume without deciding that other testimony that D.F.B. now argues should have been excluded on grounds other than the best-evidence rule was properly admitted. This included Dr. Herbsman testifying that D.F.B. had done something to cause his initially appointed attorney to have safety concerns

16

and that D.F.B. had "historically been jailed for violent acts." Significantly, however, without the introduction of the contents of the emails, evidence regarding whether D.F.B. had made recent threats of serious bodily harm would have consisted of, at most, vague testimony characterizing the emails as threatening or the safety measures taken by university police in response to the emails. The jury would have been left merely to infer that D.F.B. admitted to writing something that was in some manner threatening in the emails, which would have effectively called for speculation in an area of potentially high prejudice.

¶35    Moreover, the expert witnesses disagreed about the level of risk that D.F.B. would follow through on his delusions by committing a violent act. In the absence of clear evidence regarding the nature of threats contained in the emails, there is a reasonable probability that the jury could have weighed relatively more heavily Dr. Lee's testimony that he did not conclude that D.F.B. presented a substantial probability of harm because of the absence of evidence that D.F.B. ever "acted on" threatening statements. *See* WIS. STAT. § 51.20(1)(a)2.b. (requiring individual to "[e]vidence[] a substantial probability of physical harm to other individuals").

¶36    Having failed to develop an argument regarding harmless error, the County does not identify evidence that corroborates the contents of the emails or renders them duplicative of admissible evidence, and in my review of the record I do not discern any such evidence.

¶37    Further, the County does not argue that the record reflects that, if D.F.B.'s best-evidence objection had been sustained, the County could have then

produced the originals, which would have put the same evidence before the jury, resulting in no harm to D.F.B.

¶38 Stepping back, if the County had not offered the evidence about the contents of the emails its case *may* have been sufficient to sustain a finding of dangerousness under the second standard, by clear and convincing evidence. But that does not meet the test for harmless error. *See Hannemann*, 282 Wis. 2d 664, ¶58 ("the test for harmless error is not 'a sufficiency of the evidence standard'" (quoted source omitted)). Rather, in light of the factors above, I conclude that there is a "reasonable possibility" that the impermissible introduction of the contents of the emails "contributed to the outcome" of trial.

¶39 Without developing an argument based on it, the County notes in passing that our supreme court has stated that "'[t]he purpose of the best evidence rule is to prevent fraud upon the trier of fact, depriving it of the benefit of the original document.'" *See Giacomantonio*, 371 Wis. 2d 452, ¶32 (quoting *Grunwaldt v. Wisconsin State Highway Comm'n*, 21 Wis. 2d 153, 163, 124 N.W.2d 13 (1963)). Although unclear, the County may mean to imply, based on the animating purpose of the rule, that the error here must be deemed harmless unless D.F.B. can now show on appeal that the testimony about the contents of the emails in fact misled the jury compared with what could have been proven through admission of the originals. If that is the intended argument, it has several flaws that the County does not address. First, we lack a developed record on this issue. Notably, the County does not explain why it could not or chose not to offer the original emails as evidence. Second, such an argument would appear to confuse the circumstances here (in which no original or duplicate was ever offered, nor any explanation about why not) with those cases in which an issue arises as to whether it is permissible to, for example, admit as evidence a written duplicate of a written

original under Wis. Stat. § 910.03, which depends in part on whether there is a "genuine question … raised as to the authenticity of the original." *See supra* note 4. In sum, the County's potential argument is undeveloped, consisting only of the reference to the supreme court's statement about the purpose of the rule.

## CONCLUSION

¶40 For all of these reasons, the circuit court's commitment and medication orders are reversed and no new trial is ordered.

*By the Court.*—Orders reversed.

This opinion will not be published. *See* Wis. Stat. Rule 809.23(1)(b)4.